STATE OF NORTH CAROLINA

GUILFORD COUNTY

BON AQUA INTERNATIONAL, INC., )
CONSTANCE C. LOWENSTEIN and )
GERALD H. LOWENSTEIN, )
)
        Plaintiffs, )
)
   v. )
)
SECOND EARTH, INC., JOSEPH L. )
NAZARIO, ELENA NAZARIO, )
CHARLES M. ALEXANDER, RODNEY )
S. SHAFFER, JOSEPH CHARLES, LLC, )
DOUG FRAIN, ROBERT W. HASKIN, )
JR., TIM TUCKER, CHRISTOPHER )
HARGETT and JOSEPH CHARLES, )
INC., )
)
        Defendants. )

**VERIFIED COMPLAINT**
**(Jury Trial Demanded)**

Plaintiffs Bon Aqua International, Inc., Constance C. Lowenstein and Gerald Lowenstein,

by and through their undersigned counsel, hereby allege against Defendants as follows:

1.     Plaintiff Bon Aqua International, Inc. ("BAI") is a corporation organized and

existing under and by virtue of the laws of the State of North Carolina with its principal place of

business in Guilford County, North Carolina.

2.     Plaintiff Constance C. Lowenstein ("Ms. Lowenstein") is a citizen and resident of

Greensboro, Guilford County, North Carolina, is an officer, director and shareholder of BAI, and

owns copyrights related to BAI's water treatment systems.

3.     Plaintiff Gerald H. Lowenstein ("Mr. Lowenstein") is a citizen and resident of

Greensboro, Guilford County, North Carolina, is an officer, director and shareholder of BAI, and

owns copyrights related to BAI's water treatment systems.

4. Defendant Second Earth, Inc. ("Second Earth") is a corporation organized and existing under and by virtue of the laws of a state other than North Carolina with its principal place of business in Guilford County, North Carolina.

5. Defendant Joseph L. Nazario ("Mr. Nazario"), upon information and belief, is a citizen and resident of Greensboro, Guilford County, North Carolina.

6. Defendant Elena Nazario ("Ms. Nazario"), upon information and belief, was and is the Operations Manager of JC, LLC and the other Corporate Defendants, and is a citizen and resident of Greensboro, Guilford County, North Carolina.

7. Defendant Charles M. Alexander ("Alexander"), upon information and belief, is a citizen and resident of Greensboro, Guilford County, North Carolina.

8. Defendant Rodney S. Shaffer ("Shaffer"), upon information and belief, is a citizen and resident of Atlanta, Georgia, who has sufficient contacts with the State of North Carolina for the assertion of *in personam* jurisdiction by the Courts of North Carolina.

9. Defendant Joseph Charles, LLC ("JC, LLC") is a limited liability company organized and existing under and by virtue of the laws of the State of North Carolina with its principal place of business in Guilford County, North Carolina.

10. Defendant Doug Frain ("Frain"), upon information and belief, is a citizen and resident of Greensboro, Guilford County, North Carolina.

11. Defendant Robert W. Haskin, Jr. ("Haskin"), upon information and belief, is a citizen and resident of Greensboro, Guilford County, North Carolina.

12. Defendant Tim Tucker ("Tucker"), upon information and belief, was and is the Marketing Director of JC, LLC and the other Corporate Defendants, and is a citizen and resident of Greensboro, Guilford County, North Carolina.

2

13.    Defendant Christopher Hargett ("Hargett"), upon information and belief, is a citizen and resident of Greensboro, Guilford County, North Carolina.

14.    Defendant Joseph Charles, Inc. ("JCI") is a corporation organized and existing under and by virtue of the laws of the State of North Carolina with its principal place of business in Guilford County, North Carolina.

15.    For nearly twenty (20) years, BAI has manufactured, sold and installed Bon Aqua water treatment systems throughout the United States and the world.

16.    BAI is a leader in the industry in the treatment of scale and corrosion in all water cooled heat exchange equipment. In addition, since 2009, BAI has also sold as added features of the Bon Aqua water treatment systems: (a) an electrolytic ionizer to create an entirely chemical free treatment system; and (b) an automatic monitoring system.

17.    Customers of BAI, therefore, have the option of using the Bon Aqua water treatment system with or without chemicals and with or without a monitoring system.

18.    Upon information and belief, BAI is the only one in the world to use either the ionizer or the monitoring system in conjunction with a non-chemical water treatment system.

19.    In early 2008, JC, LLC, by and through Mr. Nazario and Alexander, expressed to Plaintiffs a desire to represent BAI in connection with the sale, installation, and service of Bon Aqua water treatment systems.

20.    On or about April 25, 2008, JC, LLC and BAI entered into a Sales Agency Agreement. A copy of the Sales Agency Agreement is attached hereto and incorporated herein as Exhibit A.

21.    BAI entered into the Sales Agency Agreement with JC, LLC because Defendants Mr. Nazario and Alexander represented to Plaintiffs, among other things that: (1) they would

3

actively market BAI's Bon Aqua water treatment systems; (2) they would use information provided to them by Plaintiffs in order to promote sales of BAI products and systems, rather than to benefit persons or entities in competition with BAI; and (3) they would keep confidential the copyrighted materials, know-how, marketing materials, training materials, customer lists, pricing lists, systems and other trade secrets and confidential information, as that term is defined in the Confidentiality Agreement referred to in Paragraph 25, below (hereinafter, the "Protected Information") provided to them by Plaintiffs.

22.     In fact, upon information and belief, Defendants Mr. Nazario, Alexander and JC, LLC never intended to honor the terms of the Sales Agency Agreement or the representations set forth in Paragraph 21; instead, Mr. Nazario, Alexander and JC, LLC formulated a plan or scheme to acquire BAI's Protected Information under false pretenses and then use the Protected Information to establish a competing company, destroy the reputation of BAI and misappropriate BAI's Bon Aqua water treatment systems, goodwill and business (the "Scheme").

23.     In furtherance of the Scheme, shortly after entering into the Sales Agency Agreement, Defendants Mr. Nazario, Alexander and Shaffer represented to BAI that, due to the quality of BAI's Bon Aqua water treatment systems, goodwill, reputation and business, and the opportunity to grow BAI's business, they sought to purchase BAI, as well as Aquadyne Inc. (a dealer of BAI Bon Aqua units owned solely by Mr. and Mrs. Lowenstein), by entering into an Option Agreement.

24.     Upon information and belief, the true purpose for Defendants Mr. Nazario, Alexander and Shaffer causing JC, LLC to enter into the Option Agreement was: (a) to gain total, unfettered access and use of BAI's Protected Information; (b) to acquire possession of at least 2,500 BAI units for a relatively low investment; and (c) use the acquired Protected

4

Information and BAI units to wrongfully establish a company in competition with BAI and thereby permanently and irreparably damage BAI's business, reputation and goodwill. A copy of the Option Agreement is attached hereto and incorporated herein as Exhibit B.

25. Furthermore, and in furtherance of the Scheme, Defendants Mr. Nazario, Alexander and Shaffer caused JC, LLC to enter into a Confidentiality Agreement with BAI, which was designed to protect all of BAI's Protected Information. However, Defendants Mr. Nazario, Alexander, Shaffer and JC, LLC never intended to comply with the terms of such Confidentiality Agreement. A copy of the Confidentiality Agreement is attached hereto and incorporated herein as Exhibit C.

26. In furtherance of the Scheme, Defendants Mr. Nazario, Alexander, JC, LLC and Shaffer conspired with others, including some or all of the other Defendants, to: (a) feign cooperation with Plaintiffs in making presentations for sales of BAI units; (b) form new entities through which they intended to wrongfully transfer some or all of BAI's Protected Information, without notifying Plaintiffs; and (c) take actions to otherwise harm Plaintiffs' reputation with its customers, all in an effort to establish a competing business and destroy Plaintiffs' businesses, goodwill and reputation and cause damages in the millions of dollars to Plaintiffs.

27. In November of 2008, Vince Pagani, an owner of IGS (Innovative Green Solutions), a North Carolina cleaning/maintenance business, approached Mr. Lowenstein about becoming a dealer for BAI; Mr. Lowenstein directed him to JC, LLC. Mr. Pagani and Defendant Frain agreed to work with JC, LLC to sell Bon Aqua water treatment products.

28. On or before March 20, 2009, Defendants Alexander, Mr. Nazario and JC, LLC, in furtherance of the Scheme and without the knowledge of Plaintiffs, registered an internet domain name for one of the businesses that they intended to be in competition with Plaintiffs.

5

The domain name is "SECONDEARTH.COM". A copy of the registration information is attached hereto as Exhibit D.

29. In Spring of 2009, Mr. Nazario informed Mr. Lowenstein that Mr. Nazario, Shaffer, Alexander and JC, LLC had "joined forces" with Frain, a part owner of a national cleaning/maintenance business, and that they were not going to involve Mr. Pagani. Upon information and belief, Frain then agreed with the other Defendants to participate in and effectuate the Scheme.

30. In furtherance of the Scheme, some of Defendants began to travel around the country making contacts and presentations about the Bon Aqua water treatment systems. Defendants represented to Plaintiffs that: (a) such contacts and presentations were being made to promote BAI's business; and (b) Defendants would keep Plaintiffs informed about the progress of such presentations and would provide copies of proposals made by Defendants to various persons and entities. A copy of an email from Alexander dated May 1, 2009 is attached hereto as Exhibit E.

31. In fact, Defendants never intended for the contacts and presentations to promote or assist BAI; instead, Defendants intended to build and grow the businesses of Second Earth and JC, Inc. (in competition with BAI) by touting the Bon Aqua water treatment system, yet renaming the exact same system as the "WRAP" water treatment system.

32. At some point, Defendants decided to abandon the name and company, Joseph Charles, LLC, and use only the names, Second Earth, Inc. and Joseph Charles, Inc, as entities in furtherance of the Scheme. Plaintiffs were not informed that Defendants were making that change.

6

33.     In or about September of 2009, Defendants represented to Plaintiffs that they were interested in proceeding with the purchase of BAI and Aquadyne. In connection with the alleged interest to proceed with the purchase, Mr. Nazario was the main contact with the Lowensteins, yet he began to mention Haskin as his attorney.

34.     For the next two months, Mr. Nazario continued to represent to Plaintiffs that they were getting close to closing on the purchase and that Plaintiffs would soon be "getting a check." At the same time, and in furtherance of the Scheme, Defendants were requesting more Protected Information from Plaintiffs, under the guise of needing the Protected Information for the purchase. Moreover, upon information and belief, Defendants continued making contacts and presentations of the "WRAP" water treatment system, without Plaintiffs' knowledge, also in furtherance of the Scheme.

35.     In furtherance of the Scheme, on or about November 10, 2009, Mr. Nazario delivered to Plaintiffs proposed Letters of Intent for the purchase all of Plaintiffs assets related to Bon Aqua. The terms of the purchase, though, were not at all what had been discussed with Plaintiffs and were unacceptable to Plaintiffs. Further, Mr. Nazario demanded that such Letter of Intent be signed that same day. A copy of the Letter of Intent and related emails from Mr. Nazario are attached hereto as Exhibit F. In response, Plaintiffs delivered to Defendants for their review revised Letters of Intent. A copy of the revised Letters of Intent are attached hereto as Exhibit G.

36.     In late November or early December of 2009, Plaintiffs began to suspect that Defendants were using and attempting to use Plaintiffs' Protected Information to, among other things, avoid compliance with the Agreements JC, LLC had made with BAI. As a result, Plaintiffs notified Defendants that they withdrew the revised Letters of Intent (attached hereto as

7

Exhibit G) and they sought from Defendants assurances that they were complying with their obligations to BAI. A copy of a string of emails between Mr. Nazario and Mr. Lowenstein are attached hereto as Exhibit H.

37.     By email dated December 5, 2009, Mr. Nazario advised Mr. Lowenstein for the first time that JC, LLC was "now insolvent," and Mr. Nazario made demands upon BAI which were inconsistent with the June 2, 2008 Option Agreement. A copy of the December 5 email is attached hereto as Exhibit I.  Plaintiffs attempted to work with Defendants (through Mr. Nazario) to find a resolution mutually beneficial, but Defendants refused any such resolution.  A copy of an email from Mrs. Lowenstein to Mr. Nazario is attached hereto as Exhibit J.

38.     By letter dated December 15, 2009, Plaintiffs (through their attorney) responded to Defendants (through Mr. Nazario) and iterated that the June 2, 2008 Option Agreement remained in place, that the Bon Aqua units in Defendants possession were owned by BAI and that they could not be disposed of except pursuant to the terms of the Option Agreement.  A copy of the December 15 letter is attached hereto as Exhibit K.  Plaintiffs also presented a proposal to amicably resolve the dispute about the Bon Aqua units.  At this time, Plaintiffs were still unaware of the Scheme.

39.     At some point after December 15, 2009 and before December 21, 2009, Plaintiffs began learning of some of the actions that Defendants had been taking in furtherance of the Scheme.  For example, Plaintiffs received from Elon University a copy of a proposal that had been made to it by Second Earth, Inc. for the so called "WRAP" water treatment system.  The proposal is virtually identical to the proposal made to Elon University by BAI (in partnership with JC, LLC) in July of 2008.  The Second Earth proposal states, among other things:

8

> We offer a water treatment program unequaled in the treatment of scale and corrosion in all water cooled heat exchange equipment. Although the WRAP system alone is neither bacteriostatic nor bactericidal, the addition of our electrolytic ionizer creates an entirely chemical free treatment system, totally in accordance with the highest environment standards.

The July 2008 BAI proposal states, among other things:

> We offer a water treatment program unequaled in the treatment of scale and corrosion in all water cooled heat exchange equipment. Although the Bon Aqua system alone is neither bacteriostatic nor bactericidal, the addition of our electrolytic ionizer creates an entirely chemical free treatment system, totally in accordance with the highest environment standards.

40.     A comparison of the July 2008 BAI proposal, attached hereto as Exhibit L, with the Second Earth proposal, attached hereto as Exhibit M, shows that they are virtually identical.

41.     By letter dated December 21, 2009, Plaintiffs confronted Defendants about the use of the Protected Information and the sale of Bon Aqua units under the name of the so called "WRAP" system. A copy of the December 21 letter is attached hereto as Exhibit N.

42.     In response to the various inquiries made to Defendants (but without knowing that Plaintiffs had a copy of the Elon University proposal in its possession), Defendants (by and through Haskin): (a) denied any wrongful activity; (b) stated that Second Earth had no relationship with JC, LLC; (c) stated that Second Earth is not marketing or selling Bon Aqua units; and (d) stated that Second Earth was marketing and attempting to sell a "new concept of water treatment" that "does not utilize [BAI's] product." In addition, Haskin threatened to sue Plaintiffs for interfering with Second Earth's marketing and sale of the so called "WRAP" system. A copy of Haskins' letter is attached hereto and incorporated herein as Exhibit O.

43.     As a result of the information learned by Plaintiffs and the suspicious communications by Defendants, Plaintiffs have continued to investigate the actions of Defendants and have learned, in just the past few weeks, that: (a) Defendants are using BAI's

9

copyrighted sales video and other copyrighted materials, including BAI's logo (a copy of a print out of Second Earth's website is attached hereto as Exhibit P); (b) Defendants have sought to register as a trademark, "Bon Aqua V" for an industrial-water purifying apparatus" (a copy of a print out of the United States Patent and Trademark Office related to a search for Bon Aqua, together with that Trademark application is attached hereto as Exhibit Q); and (c) Defendants have registered Second Earth on thebluebook.com, have listed Second Earth's product as "Bon Aqua" and have listed ongoing projects for Bon Aqua water treatment systems (a copy of a page from thebluebook.com is attached hereto as Exhibit R).

44.     In addition, Defendants, in furtherance of the Scheme, have misappropriated the Bon Aqua name and Bon Aqua water treatment units and have published false and defamatory statements about the history of Bon Aqua, all in an effort to irreparably harm Plaintiffs and profit financially from the misappropriation of the Protected Information and Bon Aqua water treatment units. In that regard, Defendants now represent that:

> "the product Bonaqua (now from Joseph Charles, Inc.) has been around for more than 20 years, it was never marketed appropriately..."

A copy of an internet publication disseminated by Defendants is attached hereto as Exhibit S.

45.     As a direct, proximate and foreseeable result of the actions of Defendants, including the acts in furtherance of the Scheme, and the concerted steps to hide the Scheme and the actions taken in furtherance thereof, Plaintiffs have suffered and will continue to suffer damages and irreparable harm.

46.     If a temporary restraining order, preliminary injunction, and permanent injunction are not issued, Plaintiffs will suffer immediate and irreparable harm including permanent and

10

irreparable damage to their reputation and business, which damage is not compensable by money damages alone.

47. Upon information and belief, at all relevant times, JC, LLC was a sham corporation, which was created to perpetrate a fraud against Plaintiffs. In addition, JC, LLC did not observe corporate formalities, nor did it have adequate capitalization; therefore, it was a sham entity wholly controlled by and the alter ego of Mr. Nazario and Alexander. The allegations herein that are asserted against JC, LLC are, therefore, asserted as well against Mr. Nazario and Alexander under the principles of piercing the corporate veil.

### FIRST CLAIM FOR RELIEF
**(Breach of Contract)**

48. Plaintiffs repeat and reallege Paragraphs 1 through 47 of the Complaint as if repeated and realleged herein.

49. BAI entered into various written agreements with JC, LLC, Mr. Nazario and Alexander, to wit: the Sales Agency Agreement, the Option Agreement and the Confidentiality Agreement.

50. JC, LLC, Mr. Nazario and Alexander have breached and are breaching the Sales Agency Agreement, the Option Agreement, and the Confidentiality Agreement as follows, but without limitation: (a) knowingly selling or attempting to sell Bon Aqua water treatment systems or units to companies that were being served by other BAI salespersons, including Aquadyne; (b) acting as a "reseller" of Bon Aqua units; (c) selling Bon Aqua units without approval by BAI; (d) claiming ownership of Bon Aqua units owned by BAI; (e) disclosing the Protected Information in violation of the Confidentiality Agreement; (f) otherwise violating the Confidentiality Agreement by taking actions as if and representing to others that they were

11

owners of, or had rights, license or authority in any of the Protected Information; and (g) failing and refusing to pay to BAI moneys to which it is entitled.

51.     Upon information and belief, Defendants Alexander, Mr. Nazario, Shaffer, Frain, Haskin, Second Earth and JC, Inc. are successors and/or assigns to the Option Agreement and the Confidentiality Agreement and, therefore, said Defendants have breached the Option Agreement and the Confidentiality Agreement as outlined in Paragraph 50, above.

52.     As a result of the various breaches by Defendants, BAI has been damaged in an amount in excess of $10,000.00.

## SECOND CLAIM FOR RELIEF
### (Conversion)

53.     Plaintiffs repeat and reallege Paragraphs 1 through 52 of the Complaint as if repeated and realleged herein.

54.     As alleged herein, Defendants have wrongfully:  (a) upon information and belief, sold Bon Aqua water treatment units without making payment to BAI; (b) taken and retained possession of BAI's Bon Aqua water treatment units; and (c) wrongfully taken and used BAI's "Bon Aqua" name and the Lowenstein's copyrighted materials.

55.     As a result of the wrongful acts of Defendants as set forth herein, Plaintiffs have been damaged in excess of $10,000.00 and are entitled to recover such damages from Defendants, jointly and severally.

56.     Further, as a result of the intentional and wrongful conduct of Defendants as set forth herein, Plaintiffs are entitled to recover punitive damages from Defendants, jointly and severally, in an amount to be determined at trial.

12

## THIRD CLAIM FOR RELIEF
### (Fraud)

57.     Plaintiffs repeat and reallege Paragraphs 1 through 56 of the Complaint as if repeated and realleged herein.

58.     Defendants deceived Plaintiffs by means of false representations of material facts, concealment of material facts, or both (herein collectively referred to as "misrepresentations").

59.     Defendants' misrepresentations included, but were not limited to: (a) creating the Scheme and acting in furtherance of the Scheme; (b) failing to actively market BAI's Bon Aqua water treatment systems for the benefit of BAI; (c) using Protected Information to irreparably harm BAI and its business, reputation and goodwill, and to benefit themselves in competition with BAI; (d) failing to keep confidential the Protected Information; (e) feigning cooperation with Plaintiffs in making presentations for sales of BAI units; (f) forming new entities (including Second Earth and JC, Inc.) through which they wrongfully transferred some or all of BAI's Protected Information, without notifying Plaintiffs; (g) making contacts and presentations about the so called "WRAP" water treatment system and failing to inform Plaintiffs about such contacts and presentations; (h) making presentations about BAI's Bon Aqua units as if the corporate Defendants, or some of them, not BAI, owned the rights to such units; (i) claiming that they owned copyrights owned by Mr. and Mrs. Lowenstein; (j) claiming to be interested in purchasing Plaintiffs' rights and assets relating to BAI and Aquadyne, though they were solely interested in misappropriating the Protected Information and competing with the businesses of BAI and Aquadyne; (k) using copyrighted sales videos and other copyrighted materials; (l) attempting to register as a trademark, "Bon Aqua V" for an industrial-water purifying apparatus" and purporting to use such "trademark" for sales and marketing; (m) registering Second Earth on

13

thebluebook.com as having 20 years of history in the business of water treatment systems and listing Second Earth's product as "Bon Aqua"; and (n) publishing false and defamatory statements about Plaintiffs, the history of BAI and their business practices.

60.      Defendants' misrepresentations were made with knowledge of their falsity or with reckless disregard of their falsity.

61.      The misrepresentations made by Defendants were reasonably calculated to deceive Plaintiffs or Defendants made such representations with reckless indifference as to their truth.

62.      Plaintiffs reasonably relied upon the misrepresentations made by Defendants to their detriment and Plaintiffs were, in fact, deceived by the misrepresentations.

63.      Plaintiffs could not have learned of the falsity of such misrepresentations through the exercise of due diligence.

64.      Upon information and belief, Defendants' misrepresentations were made in order to, among other things:  (a) effectuate the Scheme; (b) gain total, unfettered access and use of the Protected Information; (c) acquire possession of at least 2,500 BAI units for a relatively low investment, well below market value; and (d) use the acquired Protected Information and BAI units to wrongfully establish companies in competition with BAI and thereby permanently and irreparably damage BAI's business, reputation and goodwill.

65.      As a proximate result of the actions of Defendants as set forth herein, Plaintiffs have sustained damages in excess of $10,000.00 and are entitled to recover such damages from Defendants, jointly and severally.

66.      Plaintiffs are further entitled to recover from Defendants, jointly and severally, punitive damages in an amount to be determined at trial.

14

## FOURTH CLAIM FOR RELIEF
### (Negligent Misrepresentation)

67.     Plaintiffs repeat and reallege Paragraphs 1 through 66 of the Complaint as if repeated and realleged herein.

68.     Defendants' misrepresentations as set out in Paragraph 59, above, constituted false information for the guidance of Plaintiffs in a business transaction in which Defendants had a pecuniary interest.

69.     Defendants' misrepresentations were definite and specific.

70.     Defendants failed to exercise reasonable care or competence in obtaining and/or communicating the false information to Plaintiffs.

71.     Defendants' misrepresentations as set out above were made with the intention that Plaintiffs should act upon them.

72.     Plaintiffs reasonably relied upon Defendants' misrepresentations and acted upon them, and could not with due diligence have learned the true facts.

73.     As a result of Defendants' misrepresentations, Plaintiffs suffered actual, incidental, and consequential damages in an amount in excess of $10,000.00.

## FIFTH CLAIM FOR RELIEF
### (Violation of Chapter 66)

74.     Plaintiffs repeat and reallege Paragraphs 1 through 73 of the Complaint as if repeated and realleged herein.

75.     The Protected Information drives independent commercial value, whether actual or potential, from not being generally known or readily ascertainable through independent development or reverse engineering by a person who can obtain economic value from its disclosure or use.

15

76. The Protected Information is known only to Plaintiffs and those who are contractually bound to keep such information confidential.

77. The Protected Information is extremely valuable to Plaintiffs and their business and, without which, Plaintiffs and their business would suffer irreparable harm.

78. The Protected Information is extremely valuable to Defendants and Plaintiffs' competitors, and Defendants could not have lawfully acquired or duplicated the trade secrets nor taken actions in furtherance of the Scheme without the Protected Information.

79. The Protected Information has been the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

80. Defendants misappropriated Plaintiffs' trade secrets.

81. As a proximate result of Defendants misappropriation of Plaintiffs' Protected Information, Plaintiffs suffered actual, incidental, and consequential damages in an amount in excess of $10,000.00.

82. Pursuant to N.C. Gen. Stat. § 66-153, *et seq.*,, Plaintiffs are entitled to a temporary restraining order, preliminary injunction and permanent injunction, and an award of attorney's fees.

**SIXTH CLAIM FOR RELIEF**
**(Violation of N.C. Gen. Stat. § 75-1.1)**

83. Plaintiffs repeat and reallege Paragraphs 1 through 82 of the Complaint as if repeated and realleged herein.

84. The foregoing acts and practices of Defendants were immoral, unethical and unscrupulous, possessed the tendency or capacity to mislead and deceive Plaintiffs and created the likelihood of deception to Plaintiffs.

16

85. The acts of Defendants as set forth herein were in and affecting commerce.

86. The acts of Defendants alleged herein constitute unfair and deceptive acts or practices in or affecting commerce in violation of N.C. Gen. Stat. § 75-1.1, *et seq.*

87. As a proximate result of the unfair or deceptive acts or practices of Defendants, Plaintiffs have suffered damages in excess of $10,000.00 in an amount to be proven at trial.

88. Pursuant to N.C. Gen. Stat. § 75-16, Plaintiffs are entitled to have any damages awarded by the Court be trebled.

89. Pursuant to N.C. Gen. Stat. § 75-16.1, Plaintiffs are entitled to an award of attorney's fees.

**SEVENTH CLAIM FOR RELIEF**
**(Temporary, Preliminary, Permanent, and Mandatory Injunction)**

90. Plaintiffs repeat and reallege Paragraphs 1 through 89 of the Complaint as if repeated and realleged herein.

91. Defendants' actions, taken in furtherance of the Scheme, are causing immediate and irreparable harm to Plaintiffs for which there is no adequate remedy at law.

92. By virtue of Defendants' actions as alleged herein, Plaintiffs are entitled to have this Court temporarily, preliminarily and permanently order that:

> (a) Defendants, and any other person or entity acting through, in concert with or on behalf of Defendants, are restrained and prohibited from transferring, selling, marketing, promoting, assigning, disclosing or otherwise using: (i) the name "Bon Aqua"; (ii) any copyrights, know-how, marketing materials, training materials, systems, customer lists, pricing lists and any other trade secrets and confidential information

17

owned by Plaintiffs; (iii) Bon Aqua water treatment units; (iv) any water treatment systems, including, without limitation, the Bon Aqua water treatment system and the so called "WRAP" system;

(b)     Defendants, and any other person or entity acting through, in concert with, or on behalf of Defendants, are restrained and prohibited from contacting or in any way communicating with any person or entity, including, without limitation, prior and existing customers of Plaintiffs (including Aquadyne, Inc., a Bon Aqua International, Inc. dealer solely owned by the individual Plaintiffs), about any water treatment systems, including, without limitation, the Bon Aqua water treatment system and the so called "WRAP" system;

(c)     Defendants are ordered to provide to this Court and Plaintiffs, on or before February 15, 2010, a detailed list, including names, addresses, phone numbers and email addresses of all persons and entities contacted by Defendants, and any other person or entity acting through, in concert with or on behalf of Defendants, about any water treatment systems, including, without limitation, the Bon Aqua water treatment system and the so called "WRAP" system.

## EIGHTH CLAIM FOR RELIEF
### (Constructive Trust)

93.     Plaintiffs repeat and reallege Paragraphs 1 through 92 of the Complaint as if repeated and realleged herein.

18

94.     Defendants' misrepresentations included, but were not limited to: (a) creating and acting in furtherance of the Scheme; (b) failing to actively market BAI's Bon Aqua water treatment systems for the benefit of BAI; (c) using Protected Information to irreparably harm BAI and its business, reputation and goodwill, and to benefit themselves in competition with BAI; (d) failing to keep confidential the Protected Information; (e) feigning cooperation with Plaintiffs in making presentations for sales of BAI units; (f) forming new entities (including Second Earth and JC, Inc.) through which they wrongfully transferred some or all of BAI's Protected Information, without notifying Plaintiffs; (g) making contacts and presentations about the so called "WRAP" water treatment system and failing to inform Plaintiffs about such contacts and presentations; (h) making presentations about BAI's Bon Aqua units as if the corporate Defendants, or some of them, not BAI, owned the rights to such units; (i) claiming that they owned copyrights owned by Mr. and Mrs. Lowenstein; (j) claiming to be interested in purchasing Plaintiffs' rights and assets relating to BAI and Aquadyne, though they were solely interested in misappropriating the Protected Information and competing with the businesses of BAI and Aquadyne; (k) using copyrighted sales videos and other copyrighted materials; (l) attempting to register as a trademark, "Bon Aqua V" for an industrial-water purifying apparatus" and purporting to use such "trademark" for sales and marketing; (m) registering Second Earth on thebluebook.com as having 20 years of history in the business of water treatment systems and listing Second Earth's product as "Bon Aqua"; and (n) publishing false and defamatory statements about Plaintiffs, the history of BAI and their business practices.

95.     Defendants' wrongful conduct has deprived Plaintiffs of the beneficial interests to which Plaintiffs are entitled in the Protected Information and any BAI Bon Aqua units that Defendants have in their possession.

19

96.     Under the circumstances described above, Defendants should not, in good conscience, be able to retain any interest in the Protected Information and any BAI Bon Aqua units that Defendants have in their possession.

97.     Plaintiffs seek from this Court the imposition of a constructive trust for the benefit of Plaintiffs in all of the Protected Information and any BAI Bon Aqua units, as well as any proceeds of the same.

## NINTH CLAIM FOR RELIEF
### (Civil Conspiracy)

98.     Plaintiffs repeat and reallege Paragraphs 1 through 97 of the Complaint as if repeated and realleged herein.

99.     At all relevant times, Defendants knew that they were in a position of trust and confidence with Plaintiffs.

100.    At all relevant times, Defendants knew that Plaintiffs were relying upon Defendants' misrepresentations.

101.    Defendants conspired and agreed with each other to effectuate the Scheme and to take actions in furtherance thereof.

102.    As a result of the acts and omissions of Defendants as alleged herein, Plaintiffs have suffered damages in excess of $10,000.00, and are entitled to recover such damages from Defendants, jointly and severally.

WHEREFORE, Plaintiffs respectfully request that:

1.      Plaintiffs have and recover from Defendants, jointly and severally, actual, incidental, and consequential damages in an amount in excess of $10,000.00;

2. The Court temporarily, preliminarily and permanently enjoin Defendants as requested in the Seventh Claim for Relief;

3. That any damages awarded pursuant to Chapter 75 be trebled;

4. This Court impose a constructive trust for the benefit of Plaintiffs in all of the Protected Information and BAI Bon Aqua units, as well as any proceeds of the same;

5. The costs of this action, including reasonable attorney's fees, as allowed by law, be taxed against Defendants;

6. That a jury trial be had on all issues so triable; and

7. That the Court award Plaintiffs such other and further relief as to the Court may seem just and proper.

This the ___4th___ day of February, 2010.

_____
Amiel J. Rossabi
*Attorney for Plaintiffs*

OF COUNSEL:

FORMAN ROSSABI BLACK, P.A.
3623 North Elm Street, Suite 200
Post Office Box 41027
Greensboro, North Carolina 27404-1027
Telephone: (336) 378-1899

21

STATE OF NORTH CAROLINA

GUILFORD COUNTY

**VERIFICATION**

      GERALD H. LOWENSTEIN, in his capacity as Chief Executive Officer of Bon Aqua

International, Inc., being first duly sworn, deposes and says that he has read the **VERIFIED**

**COMPLAINT** and knows the contents thereof, and that the same are true of his own

knowledge, except those matters and things stated therein on information and belief, and as to

those matters and things he believes them to be true.

      This the 3rd day of February, 2010.

                              GERALD H. LOWENSTEIN, in his capacity as
                              Chief Executive Officer of BON AQUA
                              INTERNATIONAL, INC.

Sworn to and subscribed before me,

this the 3rd day of February, 2010.

_____
Notary Public

My Commission Expires: 2/20/20___

STATE OF NORTH CAROLINA

**VERIFICATION**

GUILFORD COUNTY

GERALD H. LOWENSTEIN, being first duly sworn, deposes and says that he has read

the **VERIFIED COMPLAINT** and knows the contents thereof, and that the same are true of his

own knowledge, except those matters and things stated therein on information and belief, and as

to those matters and things he believes them to be true.

This the 3rd day of February, 2010.

_____
GERALD H. LOWENSTEIN

Sworn to and subscribed before me,

this the 3rd day of February, 2010.

_____
Notary Public

My Commission Expires: 2/20/2014

*[Notary Seal: KARON E. MORRISON, NOTARY PUBLIC, FORSYTH COUNTY, NC]*

STATE OF NORTH CAROLINA

GUILFORD COUNTY

<u>**VERIFICATION**</u>

CONSTANCE C. LOWENSTEIN, being first duly sworn, deposes and says that she has

read the **VERIFIED COMPLAINT** and knows the contents thereof, and that the same are true

of her own knowledge, except those matters and things stated therein on information and belief,

and as to those matters and things she believes them to be true.

This the 3rd day of February, 2010.

_Constance C Lowenstein_

CONSTANCE C. LOWENSTEIN

Sworn to and subscribed before me,

this the 3rd day of February, 2010.

_____
Notary Public

My Commission Expires: 2/20/2014

AARON E. MORRISON
NOTARY
PUBLIC
FORSYTH COUNTY, NC