# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BON AQUA INTERNATIONAL, INC., | ) | |
| CONSTANCE C. LOWENSTEIN, and | ) | |
| GERALD H. LOWENSTEIN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:10CV169 |
| | ) | |
| SECOND EARTH, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the undersigned United States Magistrate Judge on three separate Motions to Dismiss filed by various groupings of Defendants (Docket Entries 16, 18, and 20), Plaintiffs' Motion for Leave to File Second Amended Complaint (Docket Entry 26), and Plaintiffs' Motion for Initial Pretrial Conference (Docket Entry 35). For the reasons that follow, Plaintiffs' Motion for Leave to File Second Amended Complaint and Motion for Initial Pretrial Conference will be granted and Defendants' Motions to Dismiss should be granted in part and denied in part.

## I. Procedural Background

Plaintiffs' claims arise from what they allege was a scheme, effectuated by Defendants, to feign interest in the purchase of Plaintiffs' assets in order to obtain Plaintiffs' confidential information and to establish a competing entity. (See Docket Entry

26-2.)  Plaintiffs filed their Complaint (Docket Entry 3), and subsequently an Amended Verified Complaint (Docket Entry 7), in the District Court Division of the General Court of Justice of Guilford County, North Carolina.  (See Docket Entry 1 at 1.)  Defendants petitioned for removal to this Court on the basis that, "[a]lthough couched in terms of, *inter alia*, conversion, unfair competition, and breach of contract, many of the claims in Plaintiffs' Amended Verified Complaint are actually federal claims for which this Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338." (Docket Entry 1 at 2.)

After removal, Defendants filed three separate motions to dismiss: (1) the Motion to Dismiss (Docket Entry 16), filed by those Defendants considering themselves associated more closely with corporate-Defendant Second Earth, Inc. (i.e., Second Earth, Inc., Doug Frain, and Robert Haskin); (2) the JC Defendants' Motion to Dismiss (Docket Entry 20), filed by those Defendants considering themselves associated more closely with corporate-Defendant Joseph Charles, LLC (i.e., Joseph Charles LLC, Joseph Charles, Inc., Joseph Nazario, Charles Alexander, Rodney Shaffer, Elena Nazario, Tim Tucker and Christopher Hargett);[1] and (3) the Motion to Dismiss

---

[1]  JC Defendants' Brief in Support of Motion to Dismiss provides that "Joseph Charles, Inc. was a North Carolina corporation formed on September 20, 2006 that filed Articles of Conversion to Joseph Charles, LLC on April 20, 2007." (Docket Entry 21 at 3.)  A review of the North Carolina Secretary of State website confirms Defendants' assertion.  See (continued...)

Defendants Tucker, Hargett and Ms. Nazario (Docket Entry 18), filed by a subset of those Defendants considering themselves associated more closely with Joseph Charles LLC (i.e., Tim Tucker, Elena Nazario and Christopher Hargett). Defendants' instant Motions all seek dismissal for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (Docket Entry 16 at 1; Docket Entry 18 at 1; Docket Entry 20 at 1.)

Plaintiffs subsequently filed a Notice of Partial Voluntary Dismissal (Parties) Without Prejudice (Docket Entry 24) in which Plaintiffs "dismiss[ed] all claims in the captioned action, without prejudice, against Defendants Tim Tucker [], Christopher Hargett [], and Elena Nazario [] only" (id. at 1).[2] Plaintiffs also filed their Motion for Leave to File Second Amended Complaint (Docket Entry 26), to which they attached a proposed Second Amended Complaint (Docket Entry 26-2).

Plaintiffs' proposed Second Amended Complaint alleges the

---

[1](...continued)
http://www.secretary.state.nc.us/corporations/ (last visited Jan. 14, 2013); see also Ledford v. D.R. Horton, Inc., No. 3:09CV65, 2009 WL 2432631, at *3 (W.D.N.C. Aug. 6, 2009) (unpublished) (recognizing that courts may take judicial notice of public records, including specifically records of the North Carolina Secretary of State). Accordingly, the undersigned will address claims against Joseph Charles LLC and Joseph Charles, Inc. only by reference to Joseph Charles LLC.

[2] In light of this Notice, the Motion to Dismiss Defendants Tucker, Hargett and Ms. Nazario (Docket Entry 18) is moot, as is the portion of the JC Defendants' Motion to Dismiss (Docket Entry 20) that applies to Defendants Tucker, Hargett and Elena Nazario.

following sixteen claims for relief: (1) "Breach of Contract" (id., ¶¶ 122-26); (2) "Conversion" (id., ¶¶ 127-30); (3) "Fraud" (id., ¶¶ 131-41); (4) "Violation of N.C. Gen. Stat. § 75-1.1 for Fraud" (id., ¶¶ 142-48); (5) "Unfair Competition/Passing Off" (id., ¶¶ 149-53); (6) "Violation of N.C. Gen. Stat. § 75-1.1 for Unfair Competition/Passing Off" (id., ¶¶ 154-61); (7) "Violation of Chapter 66" (id., ¶¶ 162-72); (8) "Copyright Infringement - 17 U.S.C. § 501" (id., ¶¶ 173-86); (9) "Common Law Trademark" (id., ¶¶ 187-97); (10) "False Designation of Origin/False Description (15 U.S.C. § 1125(a))" (id., ¶¶ 198-202); (11) "Declaratory Judgment - Right to Use Mark" (id., ¶¶ 203-08); (12) "Declaratory Judgment - False Markings" (id., ¶¶ 209-13); (13) "Temporary, Preliminary, Permanent and Mandatory Injunction" (id., ¶¶ 214-16); (14) "Constructive Trust" (id., ¶¶ 217-24); (15) "Civil Conspiracy" (id., ¶¶ 225-29); and (16) "Fraudulent Transfer" (id., ¶¶ 230-46).

## II. Motion for Leave to File Second Amended Complaint

By rule, "[t]he [C]ourt should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Under this standard, the Court has some discretion, "but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion." Foman v. Davis, 371 U.S. 178, 182 (1962). The United States Court of Appeals for the Fourth Circuit has explained that "[t]he law is well settled that leave to amend a pleading should be denied only when the amendment would be

-4-

prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999).

Plaintiffs seek to amend their Complaint in order to: "(i) assert claims they could not have brought prior to Defendants' removal of the matter to [this] Court[,] (ii) to better conform their allegations to the facts as discovered since filing the first amended complaint, and (iii) to address allegations and issues that had not occurred at the time Plaintiffs filed their initial pleadings . . . ." (Docket Entry 27 at 3.) Plaintiffs also note that, although they believe their original Complaint states their claims with sufficient particularity, "the proposed Second Amended Complaint addresses, at length, the issues raised by Defendants in their motions to dismiss." (Id.)

Defendants have not asserted that Plaintiffs bring their instant Motion in bad faith (see Docket Entries 31, 32) and, given the early stage of these proceedings, allowing the amendment would not prejudice the Defendants. As Plaintiffs note, "[n]o discovery has been done, no scheduling order has been entered, no Rule 26(f) Conference has been scheduled, and no trial date has been set." (Docket Entry 26, ¶ 14.) Accordingly, Plaintiffs' Motion for Leave to File Second Amended Complaint (Docket Entry 26) will be

granted,[3] and Defendants' arguments regarding futility (Docket Entry 31 at 8-19) will be addressed in conjunction with Defendants' Motions to Dismiss, in light of the facts as pled in the Second Amended Complaint (Docket Entry 26-2).

## III. Motions to Dismiss

### A. Factual Background

Plaintiffs' Second Amended Complaint, read in a light most favorable to Plaintiffs,[4] alleges the following:

Bon Aqua International, Inc. ("Bon Aqua"), a North Carolina Corporation owned and operated in part by Gerald and Constance Lowenstein, manufactures and sells devices for the treatment of scale and corrosion in water-cooled heat exchange equipment (the

---

[3] For reasons stated in Deberry v. Davis, No. 1:08CV582, 2010 WL 1610430, at *7 n. 8 (M.D.N.C. Apr. 19, 2010) (unpublished), the undersigned Magistrate Judge will enter an order, rather than a recommendation, regarding this Motion. See also Everett v. Prison Health Servs., 412 F. App'x 604, 605 & n. 2 (4th Cir. 2011) ("Everett moved for leave to amend her complaint . . . to add . . . a defendant based on information obtained during discovery, and to add a state-law claim of medical malpractice against [that new defendant]. After a hearing, the magistrate judge denied Everett's motion. Everett timely objected, thereby preserving the issue for review by the district court. . . . [T]he district court could not modify or set aside any portion of the magistrate judge's order unless the magistrate judge's decision was 'clearly erroneous or contrary to law.' Fed. R. Civ. P. 72(a); 28 U.S.C.A. § 636(b)(1)(A) (2006 & Supp. 2008).").

[4] At this stage, "the [C]ourt should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs, Inc. v. Matakari, 7 F.3d 1130, 1134 (4th Cir. 1993).

-6-

"Bon Aqua Units"). (See Docket Entry 26-2, ¶¶ 2, 3, 13-16, 30.)[5]

Aquadyne, a company owned solely by the Lowensteins, is an authorized dealer of the Bon Aqua Units. (See id., ¶ 13.) At the time Bon Aqua began manufacturing the Bon Aqua Units, U.S. Patent Nos. 4,265,746, 4,265,754 and 4,265,755 protected them. (See id., ¶¶ 13, 21.) Each of the relevant patents expired on or before August 23, 1999. (Id.) As Bon Aqua still uses the original molds in its manufacturing process, the Bon Aqua Units continue to bear markings for the now-expired patents. (Id., ¶ 17.)

In late 2007 or early 2008, Joseph Charles LLC, through Joseph Nazario and Charles Alexander, expressed a desire to represent Bon Aqua in the sale, installation and service of Bon Aqua Units. (See id., ¶ 34.) Mr. Lowenstein met with Nazario and Tim Tucker (as representatives of Joseph Charles LLC) on January 23, 2008, to discuss this interest. (Id.)[6] At that meeting, Joseph Charles LLC and Bon Aqua agreed to, but did not formally enter, a sales agency arrangement in which Joseph Charles LLC would receive 40% of the

---

[5] The Second Amended Complaint does not identify the Lowensteins' ownership interest in Bon Aqua (see Docket Entry 26-2); however, attachments thereto indicate that, at least at some point, two other owners held 25% interests, with the Lowensteins holding the remaining 50% (see Docket Entry 26-3 at 31-32).

[6] The Brief in Support of Motion to Dismiss Defendants Tucker, Hargett and Ms. Nazario (Docket Entry 19) describes Tucker as a "rank and file employee[] of [Joseph Charles] LLC" (id. at 7) without "ownership interests, management authority or supervisory authority" (id.).

revenue from sales, service, installations and follow-ups with clients for which it was responsible. (Id.)

In late March 2008, Nazario, Alexander, Rodney Shaffer and Richard Newton, Shaffer's financial advisor, attended a meeting at Bon Aqua's office. (Id., ¶ 36.)[7] At this meeting, Nazario and Joseph Charles LLC proposed a plan for the purchase of Bon Aqua and Aquadyne by Shaffer and persons related to Shaffer. (Id.) Plaintiffs rejected said proposal on the grounds that it relied on overly optimistic sales projections. (Id., ¶ 38.) At this meeting, Mr. Lowenstein made clear that no currently valid patents applied to the Bon Aqua Units. (Id., ¶ 37.)

Despite the failure of the foregoing meeting, a month later, Joseph Charles LLC and Bon Aqua formally executed the sales agency agreement to which they had previously agreed (the "Sales Agency Agreement"). (Id., ¶ 42.) Moreover, Nazario, Alexander, Shaffer and Joseph Charles LLC continued to express an interest in purchasing Bon Aqua and Aquadyne. (Id., ¶ 44.) Accordingly, in addition to the Sales Agency Agreement, Bon Aqua, Aquadyne and Joseph Charles LLC negotiated an option agreement (the "Option Agreement"), entered into on June 2, 2008, which granted Joseph Charles LLC the ability to purchase the assets of Bon Aqua and Aquadyne if Joseph Charles LLC met certain conditions regarding

_____

[7] The Second Amended Complaint does not explain how Shaffer became involved in these negotiations, whether as an employee or owner of Joseph Charles LLC, a separate investor, or otherwise. (See Docket Entry 26-2.)

sales of Bon Aqua Units.  (Id., ¶ 50; see also Docket Entry 26-3 at 49-52.)  In furtherance of these conditions, Joseph Charles LLC acquired 2,500 Bon Aqua Units (the "Disputed Units") from Bon Aqua for later sale.  (See Docket Entry 26-2, ¶ 50; see also Docket Entry 26-3 at 49-52.)  In conjunction with the Option Agreement, Nazario, Alexander and Shaffer caused Joseph Charles LLC to enter into a confidentiality agreement with Bon Aqua (the "Confidentiality Agreement"), through which Plaintiffs sought to protect certain business information.  (See Docket Entry 26-2, ¶ 53; see also Docket Entry 26-3 at 54-55.)[8]

In November 2008, Nazario, Alexander and Shaffer became acquainted with Doug Frain, who was associated with another company with interest in becoming a Bon Aqua dealer and/or possibly purchasing Bon Aqua.  (See Docket Entry 26-2, ¶¶ 58-61.)  Nazario, Alexander, Shaffer and Frain together came to believe that, because the Bon Aqua Units lacked patent protection, Bon Aqua's value rested in its goodwill and trade secrets.  (See id., ¶ 63.)  As a result, said Defendants joined together to misappropriate Plaintiffs' marks, copyrighted material, identity, goodwill and trade secrets.  (See id., ¶ 64.)

---

[8] Although the Second Amended Complaint indicates that Nazario, Alexander and Shaffer caused Joseph Charles LLC to enter into the Confidentiality Agreement (see Docket Entry 26-2, ¶ 53), only Nazario and Alexander executed it on behalf of Joseph Charles LLC (see Docket Entry 26-3 at 54-55).

-9-

Nazario, Alexander, Shaffer and Frain began performing some business operations under the name Second Earth, Inc. ("Second Earth"), a then-unincorporated entity, and under the name Joseph Charles Inc. - Joseph Charles LLC's predecessor entity. (See id., ¶ 67.)[9]  Nazario and Frain traveled around the country making presentations about the Bon Aqua water treatment system. (See id., ¶ 71.)  Plaintiffs believed such efforts were done to promote Bon Aqua's business (see id.), but Nazario and Frain actually presented the Bon Aqua Units as the "WRAP" water treatment system, which they described as a product created, manufactured and marketed by Second Earth (see id., ¶ 72).  Around this same time, Nazario, Alexander, Shaffer and Frain determined that they would need additional funds to continue their business.  (See id., ¶ 76.)  They approached Robert Haskin and Gary Slack, who agreed to join Nazario, Alexander, Shaffer and Frain.  (See id.)

In September 2009, Defendants represented to Plaintiffs that they wished to proceed with the purchase of Bon Aqua and Aquadyne. (See id., ¶ 77.)[10]  Plaintiffs met with Nazario to discuss this

---

[9] According to the Second Amended Complaint, eventually, Nazario, Alexander, Shaffer and Frain decided to abandon Joseph Charles LLC entirely and operate only as Second Earth and Joseph Charles, Inc.  (See id., ¶ 75.)  Given the absence of any allegation or other indication of a formal conversion or merger as to the relevant entities, this Memorandum Opinion addresses Second Earth separately from the Joseph Charles entities.

[10] The Second Amended Complaint describes the representation of an interest to purchase Bon Aqua and Aquadyne as made generally by "Defendants" (see Docket Entry 26-2, ¶ 77), but notes in the
(continued...)

-10-

interest. (See id., ¶ 78.) Nazario reported the existence of six potential investor groups (see id.) and stated that Haskin, in particular, needed proof that Bon Aqua manufactured the Bon Aqua Units and requested vendor records as such proof (see id.). Plaintiffs agreed to provide the requested vendor information solely upon receipt of a confidentiality letter from Haskin (the "Confidentiality Letter"). (See id.)

Nazario delivered the Confidentiality Letter the next day and Plaintiffs disclosed the responsive information (the "Vendor Files"). (See id., ¶ 79.) For the next two months, Nazario requested additional confidential information from Plaintiffs based on assertions that Defendants needed it to proceed with the purchase of Bon Aqua and Aquadyne. (See id., ¶ 86.) Items requested included all contacts Bon Aqua had with its dealers and distributors (the "Dealer and Distributor Files") (id., ¶ 80) and information regarding Bon Aqua's manufacturing rights, licenses and practices (the "Manufacturing and Licensing Files") (id., ¶ 81).

On November 6, 2009, Haskin, Slack, Nazario and Frain joined together to formally incorporate Second Earth as a Delaware corporation. (See id., ¶ 87.) In a meeting on November 10, 2009, Nazario withheld that information from Plaintiffs and represented that the planned purchase of Bon Aqua was proceeding. (See id.)

---

[10] (...continued)
same paragraph that "Nazario remained the only contact for the Lowensteins in connection with the feigned interest to proceed with the purchase" (id. (emphasis added)).

Also on November 10, 2009, Nazario sent Plaintiffs an email which included a proposed letter of intent to purchase the assets of Bon Aqua and Aquadyne (the "Draft Letter of Intent"). (See id., ¶ 88.)[11] On November 13, 2009, Plaintiffs sent a revised draft letter of intent ("Revised Letter of Intent") which, among other modifications, made it clear that Plaintiffs held no patents in the Bon Aqua Units. (See id., ¶ 90.)

In late 2009, Plaintiffs began to suspect that Defendants were misusing Plaintiffs' confidential information. (See id., ¶ 91.) Plaintiffs gave notice of withdrawal from the Revised Letter of Intent and sought assurances that Defendants were complying with their obligations. (See id.) At that time, Nazario advised Mr. Lowenstein of Joseph Charles LLC's insolvency. (See id., ¶ 92.) This litigation followed.

## B. Applicable Standard

The Second Amended Complaint asserts claims under both federal and state law. Although the Court looks to North Carolina law in analyzing Plaintiffs' substantive state law claims, "pleading standards are a matter of procedural law governed in this Court by federal, not state, law." McFadyen v. Duke Univ., 786 F. Supp. 2d 887, 920 (Beaty, C.J.) (M.D.N.C. 2011) (citing Jackson v.

---

[11] The Second Amended Complaint denies that Plaintiffs knew Defendants were operating as Second Earth on November 10, 2009, or that Defendants had formally incorporated Second Earth, but the Draft Letter of Intent provided to the Court contemplates Second Earth as a party to the agreement. (See Docket Entry 26-4 at 23.)

Mecklenburg Cnty., N.C., No. 3:07-cv-218, 2008 WL 2982468, at *2 (W.D.N.C. July 30, 2008) (unpublished)), rev'd in part on other grounds, ___ F.3d ___ (4th Cir. 2012). Under the applicable federal pleading standard, a complaint fails to state a claim if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

Where, as here, a complaint asserts breach of contract and tort claims based on the same factual circumstances, "[o]nly where a breach of contract also constitutes an 'independent tort' may tort actions be pursued." Strum v. Exxon Co., USA, 15 F.3d 327, 330 (4th Cir. 1994) (citing Restatement (Second) of Contracts § 355 (1981)). More specifically, North Carolina law requires an "identifiable" independent tort and some aggravating element such as malice or recklessness. Id. "As Strum captured this standard: 'We think it unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are

-13-

most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations.'" <u>Capital Factors, Inc. v. The Fryday Club, Inc.</u>, 209 F. Supp. 2d 583, 585 (W.D.N.C. 2002) (quoting <u>Strum</u>, 15 F.2d at 333).

Further, because Plaintiffs' claims focus on the actions of a group of individuals associated with certain corporate entities, the Court must note that, under North Carolina law, "[t]he general rule is that in the ordinary course of business, a corporation is treated as distinct from its shareholders." <u>State ex rel. Cooper v. Ridgeway Brands Mfg., LLC</u>, 362 N.C. 431, 438, 666 S.E.2d 107, 112 (2008) (citing <u>Troy Lumber Co. v. Hunt</u>, 251 N.C. 624, 627, 112 S.E.2d 132, 134 (1960)). However, "[a] corporate official may be held personally liable for tortious conduct <u>committed by him</u>, though committed primarily for the benefit of the corporation." <u>Polo Fashions, Inc. v. Craftex, Inc.</u>, 816 F.2d 145, 149 (4th Cir. 1987) (emphasis added); <u>see also</u> <u>Tillman v. Wheaton-Haven Recreation Ass'n</u>, 517 F.2d 1141, 1145 (4th Cir. 1975) ("'It is the general rule that if an officer or agent of a corporation directs or participates actively in the commission of a tortious act or an act from which a tort necessarily follows or may reasonably be expected to follow, he is personally liable to a third person for injuries proximately resulting therefrom.'" (quoting <u>Lobato v. Pay Less Drug Stores</u>, 261 F.2d 406, 408 (10th Cir. 1958)); <u>Cardinal Health 414, Inc. v. Schwartz Props., Inc.</u>, No. 1:06CV570, 2008 WL

-14-

5216189, at *5 (M.D.N.C. Dec. 11, 2008) (Eliason, M.J.) (unpublished) ("[O]ne is personally liable for all torts committed by him, including negligence, notwithstanding that he may have acted as agent for another or as an officer for a corporation." (citing Palomino Mills, Inc. v. Davidson Mills Corp., 230 N.C. 286, 52 S.E.2d 915 (1949)).

In the interest of efficiency, the discussion which follows in Section III.C. will address whether the Second Amended Complaint contains sufficient allegations to state a claim against Joseph Charles LLC and/or Second Earth, as well as against the individual Defendants, based on their direct participation in tortious conduct. Section III.D. then will consider whether the Second Amended Complaint alleges sufficient facts to permit any claims deemed viable against Joseph Charles LLC to proceed against Nazario, Alexander and/or Shaffer based on a corporate veil-piercing theory, as Plaintiffs propose (see Docket Entry 26-2, ¶ 121).

### C. Sufficiency of Plaintiffs' Claims based on Defendants' Direct Involvement

#### i. Breach of Contract

Plaintiffs allege Defendants breached (1) the Sales Agency Agreement (Docket Entry 26-3 at 29); (2) the Option Agreement (Docket Entry 26-3 at 49-52); and (3) the Confidentiality Agreement

(Docket Entry 26-3 at 54-55). (See Docket Entry 26-2, ¶¶ 122-26.)[12]
Under North Carolina law,[13] "[t]he elements of a claim for breach
of contract are (1) existence of a valid contract and (2) breach of
the terms of that contract." Johnson v. Colonial Life & Accident
Ins. Co., 173 N.C. App. 365, 369, 618 S.E.2d 867, 870 (2005). "A
contract, express or implied, requires assent, mutuality, and
definite terms." Schlieper v. Johnson, 195 N.C. App. 257, 265, 672
S.E.2d 548, 553 (2009) (citing Horton v. Humble Oil & Ref. Co., 255
N.C. 675, 679, 122 S.E.2d 716, 719 (1961)). In addition, as to the
contract element, North Carolina law mandates proof of "an offer,
acceptance and consideration." Cap Care Grp., Inc. v. McDonald,
149 N.C. App. 817, 822, 561 S.E.2d 578, 582 (2002) (citing Copy
Prods., Inc. v. Randolph, 62 N.C. App. 553, 555, 303 S.E.2d 87, 88
(1983)). Furthermore, "[i]n every contract there is an implied
covenant of good faith and fair dealing that neither party will do
anything which injures the right of the other to receive the

_____

[12] At times, the discussion which follows will refer to the
Sales Agency Agreement, the Confidentiality Agreement and the
Option Agreement together as the "Agreements."

[13] The Parties appear to agree that, where the Court must apply
state law, North Carolina law governs. (See Docket Entries 17, 19,
21, 27, 28.) Moreover, given the allegations in the Second Amended
Complaint that "Bon Aqua . . . is a corporation organized and
existing under and by virtue of the laws of the State of North
Carolina with its principal place of business in Guilford County,
North Carolina" (Docket Entry 26-2, ¶ 1), that the individual
Plaintiffs reside in North Carolina (see id., ¶¶ 2-3), and that the
events at issue took place in North Carolina (see id., ¶¶ 14-121),
no reason exists to question this view.

-16-

benefits of the agreement." Bicycle Transit Auth., Inc. v. Bell, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985).

Defendants contend that the Court should dismiss Plaintiffs' contract claim(s) because (1) the Agreements lacked consideration (see Docket Entry 21 at 7-8) and (2) only Bon Aqua and Joseph Charles LLC were parties to the Agreements, such that, as non-parties to the Agreements, the remaining Defendants have no liability for breach of contract (see id. at 8-10; Docket Entry 17 at 7).

a. Joseph Charles LLC

Plaintiffs have alleged sufficient facts to state a claim for breach of contract against Joseph Charles LLC. Defendants contend that all of the Agreements in question "were fundamentally premised upon the existence of Plaintiffs' nonexistent patents and trademarks [and thus] lacked consideration . . . ." (Docket Entry 21 at 8.) However, the following factual matter, contained in the Second Amended Complaint or its related attachments,[14] precludes a finding, as a matter of law, that the existence of valid patents and trademarks constituted the only relevant consideration for the Agreements:

---

[14] In deciding a motion to dismiss, the Court may consider exhibits attached to the Complaint without converting the motion into one for summary judgment. See Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc., 576 F.3d 172, 176 (4th Cir. 2009).

-17-

(1) Mr. Lowenstein informed certain Defendants, at a March 27, 2008, meeting, before entry of any of the Agreements, that no patents covered the Bon Aqua Units (see Docket Entry 26-2, ¶ 37);

(2) an early version of the Option Agreement deleted the words "all associated patents" from the list of items Joseph Charles LLC had the option to purchase (Docket Entry 26-3 at 42-47);

(3) an attachment to the Revised Letter of Intent stated: "Seller holds neither patents nor trademarks related to the Bon Aqua Assets to be purchased" (Docket Entry 26-4 at 30); and

(4) an email from Nazario dated September 25, 2009, acknowledges that "there is no patent protection" (id. at 7).

Furthermore, the Agreements reflect other forms of consideration that may establish the existence of valid contracts. "Consideration has been defined as some benefit or advantage to the promisor or some loss or detriment to the promisee." Deans v. Layton, 89 N.C. App. 358, 368, 366 S.E.2d 560, 567 (1988) (citing Helicopter Corp. v. Realty Co., 263 N.C. 139, 147, 139 S.E.2d 362, 368 (1964)). Here, the Sales Agency Agreement permits Joseph Charles LLC to represent Bon Aqua in the sale of the Bon Aqua Units in exchange for a 40% commission for products sold within the United States. (See Docket Entry 26-3 at 29.) Said agreement also contemplates Bon Aqua providing Joseph Charles LLC with "training, sales assistance and technical support," as well as "brochures, DVDs and CDs at a nominal charge." (Id.) The Option Agreement

-18-

purports to give Joseph Charles LLC the ability to purchase "Bon Aqua and Aquadyne, which includes trademarks, copyrighted materials, know-how, systems, and procedures from Gerald and Constance Lowenstein" on certain terms within a 24-month period, and limits Bon Aqua's ability to sell an ownership interest to any other entity during that period. (Id. at 49-50.) The Option Agreement also contains a subsection entitled "Distribution Agreement" which incorporates many of the same terms as the Sales Agency Agreement. (Id.) Finally, the Confidentiality Agreement plans for the exchange of certain information based on the agreement by Joseph Charles LLC to keep such information confidential. (See id. at 54-55.)

Plaintiffs' Second Amended Complaint also sets out sufficient factual matter to support an inference that Joseph Charles LLC breached the Agreements at issue. More specifically, the Second Amended Complaint alleges that:

> [Joseph Charles LLC], Nazario and Alexander have breached and are breaching the Sales Agency Agreement, the Option Agreement, and the Confidentiality Agreement as follows, but without limitation: (a) knowingly selling or attempting to sell Bon Aqua Water Treatment Units or Systems to companies that were being served by other [Bon Aqua] salespersons, including Aquadyne; (b) acting as a "reseller" of Bon Aqua Units; (c) selling Bon Aqua Units without approval by [Bon Aqua]; (d) claiming ownership of Bon Aqua Units owned by [Bon Aqua]; (e) disclosing the Trade Secrets in violation of the Confidentiality Agreement; (f) otherwise violating the Confidentiality Agreement by taking actions as if, and representing to others that, they were owners of, or had rights, license or authority in any of the Trade Secrets; and (g) failing

and refusing to pay to [Bon Aqua] moneys to which it is
    entitled.

(Docket Entry 26-2, ¶ 124.)

    Such allegations, in conjunction with the assertions
throughout the Second Amended Complaint, sufficiently allege a
plausible claim for breach with respect to each of the three
Agreements.  For example, the Second Amended Complaint alleges that
Joseph Charles LLC shared confidential information with Frain (see
id., ¶ 62) which would support a contention that it breached the
Confidentiality Agreement, and the Second Amended Complaint
contains sufficient factual matter to support a claim that
Defendants breached the implied covenant of good faith and fair
dealing implicit in the Agreements (see, e.g., id., ¶ 72).
Accordingly, Plaintiffs' claim for breach of contract against
Joseph Charles LLC should proceed.

    b. Second Earth

    Plaintiffs allege that, although not a party to the
Agreements, "Second Earth . . . purport[s] to be [a] successor[]
and/or assign[] to the Option Agreement and the Confidentiality
Agreement and, therefore, said Defendant[] ha[s] breached the
Option Agreement and the Confidentiality Agreement . . . ." (Id.,
¶ 125.)[15]  As a general rule, under North Carolina law, a

_____

        [15] The entirety of Plaintiffs' allegation states: "Upon
information and belief, Defendants Alexander, Nazario, Shaffer,
Frain, Haskin, Second Earth and Joseph Charles Inc. purport to be
successors and/or assigns to the Option Agreement and the
                                              (continued...)

-20-

corporation that purchases all, or substantially all, of the assets of another corporation does not become liable for the previous corporation's debts. G.P. Publ'ns, Inc. v. Quebecor Printing-St. Paul, Inc., 125 N.C. App. 424, 432, 481 S.E.2d 674, 679, disc. review denied, 346 N.C. 546, 488 S.E.2d 800 (1997). North Carolina, however, recognizes four exceptions to this rule: "(1) where there is an express or implied agreement by the purchasing corporation to assume the debt or liability; (2) where the transfer amounts to a de facto merger of the two corporations; (3) where the transfer of assets was done for the purpose of defrauding the corporation's creditors; or (4) where the purchasing corporation is a 'mere continuation' of the selling corporation in that the purchasing corporation has some of the same shareholders, directors, and officers." Id. at 432-33, 481 S.E.2d at 679.

---

[15](...continued)
Confidentiality Agreement and, therefore, said Defendants have breached the Option Agreement and the Confidentiality Agreement as outlined in Paragraph 124, above." (Docket Entry 26-2, ¶ 125.) However, the Second Amended Complaint offers no factual matter to support holding any of these Defendants, with the exception of Second Earth, liable on a theory of successor liability or as an assign to any of the Agreements. (See Docket Entry 26-2.) Moreover, because none of the individual Defendants were parties to the Agreements, no basis exists to hold any of the individual Defendants liable for breach absent piercing of the corporate veil. See Justice v. Dimon, No. 3:10cv413, 2011 WL 2183146, at *5 (W.D.N.C. June 6, 2011 ) (unpublished) ("Breach of contract can not be asserted against a person who was not a party to the contract sought to be enforced. Even if the court were to assume that these individual defendants signed the contract, an officer who signs a contract on behalf of a corporation is not personally liable for the contract's breach . . . ." (citing Canady v. Mann, 107 N.C. App 252, 259, 419 S.E.2d 597, 601 (1992))).

In this case, the "mere continuation" exception appears most applicable. "The traditional rule regarding 'mere continuation' is that 'a corporate successor is the continuation of its predecessor if only one corporation remains after the transfer of assets and there is identity of stockholders and directors between the two corporations.'" Id. at 434, 481 S.E.2d at 680 (quoting Ninth Ave. Remedial Grp. v. Allis-Chalmers Corp., 195 B.R. 716, 724 (N.D. Ind. 1996)).  Although North Carolina courts follow the traditional approach to mere continuation, they also examine "(1) inadequate consideration for the purchase; and (2) lack of some of the elements of a good faith purchaser for value." Id. (citing Budd Tire Corp. v. Pierce Tire Co., 90 N.C. App. 684, 687, 370 S.E.2d 267, 269 (1988)).

Under this standard, Plaintiffs have alleged sufficient facts to hold Second Earth liable as a successor to Joseph Charles LLC on a mere continuation theory.  Specifically, Plaintiffs have alleged that, "sometime prior to supposedly becoming insolvent, [Joseph Charles LLC] transferred to Second Earth, without substantial consideration, possession of all of the [Disputed Units]." (Docket Entry 26-2, ¶ 106.)  They also note that "Haskin told the [state court] at the [temporary restraining order] hearing that the [Disputed Units] had been transferred to Second Earth." (Id.) Further, in an email attached to the Second Amended Complaint, Nazario confirms that Joseph Charles LLC is insolvent (see Docket

Entry 26-4 at 38), indicating (to a degree sufficient to survive a motion to dismiss) that only one entity continued in existence.

Plaintiffs have also alleged that Second Earth continued the business efforts of Joseph Charles LLC. Specifically, an attachment to the Second Amended Complaint indicates that Second Earth, in the Draft Letter of Intent (sent by Nazario from an "@secondearthinc.com" email address), contemplated superseding and replacing "[a]ll written and oral Agreements between the Lowenstein's [sic] and <u>Joseph Charles, LLC, Joseph F. Nazario and Charles Alexander, including, but not limited to, the Option Agreement</u> . . . ." (Docket Entry 26-4 at 23 (emphasis added).) Furthermore, screen shots from the Second Earth website (<u>see</u> <u>id.</u> at 54-61), as well as brochures provided to potential customers by Second Earth (<u>see</u> <u>id.</u> at 48-49), reflect a continuation of efforts by Second Earth to sell Bon Aqua Units.

Accordingly, despite the lack of allegations of a formal "corporate sale, merger, assignment, or assumption" between Second Earth and Joseph Charles LLC (Docket Entry 17 at 7-8), the factual matter in the Second Amended Complaint and its attachments supports an inference that Second Earth operated as a mere continuation of Joseph Charles LLC and thus Plaintiffs' breach of contract claim against Second Earth should survive.

Plaintiffs allege conversion of the Disputed Units (obtained by Joseph Charles LLC as a result of the Option Agreement) and "other items of tangible personal property belonging to Plaintiffs, including copies of the Sales DVD, Sales CD, and [Bon Aqua]'s other sales and training materials conditionally provided to Defendants by Plaintiffs." (Docket Entry 26-2, ¶ 128.) Conversion claims may proceed parallel to a breach of contract claim pursuant to North Carolina's independent tort doctrine. See, e.g., North Carolina Ports Auth. v. Lloyd A. Fry Roofing Co., 294 N.C. 73, 83, 240 S.E.2d 345, 351 (1978) (listing situation where "there was a willful injury to or conversion of the property" as viable independent tort). Moreover, under North Carolina law, "[t]he tort of conversion is well defined as 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" Peed v. Burleson's, Inc., 244 N.C. 437, 439, 94 S.E.2d 351, 353 (1956) (quoting 89 C.J.S., Trover & Conversion, § 1). "Where there has been no wrongful taking or disposal of the goods, and the defendant had merely come rightfully into possession and then refused to surrender them, demand and refusal are necessary to the existence of the tort." White by Brown v. White, 76 N.C. App. 127, 130, 331 S.E.2d 703, 705 (1985) (internal quotation marks omitted).

-24-

Defendants seek dismissal of Plaintiffs' claim for conversion because: (1) "the property allegedly converted was instead bought and paid for in anticipation of being sold to third parties" (Docket Entry 21 at 10; see also Docket Entry 17 at 7-8); (2) "'[i]n North Carolina, only goods and personal property are properly the subjects of a claim for conversion'" (Docket Entry 21 at 10 (quoting Norman v. Nash Johnson & Sons' Farms, Inc., 140 N.C. App. 390, 414, 537 S.E.2d 248, 264 (2000))); and (3) Plaintiffs do not allege "that [Second Earth, Haskin and Frain], as opposed to [Joseph Charles LLC, Joseph Charles, Inc., Nazario, Alexander or Shaffer], have possessed or otherwise exercised a right of ownership over the [Disputed Units]" (Docket Entry 17 at 8).

### a. Joseph Charles LLC

Plaintiffs have alleged sufficient factual matter to support a claim of conversion against Joseph Charles LLC with respect to the Disputed Units. Despite Defendants' contention that the Disputed Units were "bought and paid for" (Docket Entry 21 at 10), Plaintiffs provide sufficient factual assertions to permit a finding that they maintained ownership, including that: (1) the Option Agreement entered into between Bon Aqua and Joseph Charles LLC stated that "[t]hese units will be inventoried by [Joseph Charles LLC], but will be owned by [Bon Aqua] until sold" (Docket Entry 26-3 at 51); (2) a prior version of the Option Agreement replaced the word "purchase" with "place orders for" in reference

to the Disputed Units (id. at 42-47); and (3) an email exchange between the Parties prior to the execution of the Option Agreement included a declaration by Nazario that "Bon Aqua will own [the Disputed Units and] we will pay for [them]" (id. at 31-33). In addition, consistent with the elements of a conversion claim, Plaintiffs have alleged demand for the Disputed Units (see Docket Entry 26-4 at 42-43), as well as refusal of return (see Docket Entry 26-2, ¶ 118).

However, with respect to the "other items of tangible personal property" (id., ¶ 128), Plaintiffs have failed to allege sufficient facts to support a claim. The Second Amended Complaint notes that the Sales DVD, Sales CD and other sales and training materials were "conditionally provided" to Defendants. (Id.) Under such circumstances, demand for return and refusal constitute elements of the tort of conversion. See White 76 N.C. App. at 130, 331 S.E.2d at 705. Plaintiffs have not pleaded such facts with respect to these items. (See Docket Entry 26-2.) "[This] failure to allege demand and refusal is fatal to [the] conversion claim." ACS Partners, LLC v. Americon Grp., Inc., No. 3:09cv464-RJC-DSC, 2010 WL 883663, at *11 (W.D.N.C. Mar. 5, 2010) (unpublished).

b. Second Earth

Plaintiffs have also set forth sufficient factual allegations to support a claim of conversion against Second Earth with respect to the Disputed Units. Contrary to Defendants' assertion that

Plaintiffs do not allege "that [Second Earth] . . . as opposed to [Joseph Charles LLC, Joseph Charles, Inc., Nazario, Alexander, Shaffer], have possessed or otherwise exercised a right of ownership over the [Disputed Units]" (Docket Entry 17 at 8), the Second Amended Complaint states that "on January 28, 2010 Haskin told the [state court] at the [temporary restraining order] hearing that the [Disputed Units] had been transferred to Second Earth" (Docket Entry 26-2, ¶ 106). Further, Plaintiffs have attached to the Second Amended Complaint evidence of demand for return and refusal of that demand, as the emails previously noted from Nazario discussing return came from an "@secondearthinc.com" email address. (Docket Entry 26-4 at 38.) Accordingly, Plaintiffs claim for conversion against Second Earth, with respect to the Disputed Units, should proceed. However, with respect to "other items of tangible personal property" (Docket Entry 26-2, ¶ 128), the lack of any allegations of demand and refusal (see Docket Entry 26-2) again defeats that aspect of the claim. See ACS Partners, 2010 WL 883663, at *11.

### c. Individual Defendants

The Second Amended Complaint does not allege factual matter to support a claim against any of the individual Defendants for conversion based on a theory of direct participation in such tort. The Second Amended Complaint only specifies that certain Defendants provided the capital in connection with Joseph Charles LLC's

acquisition of the Bon Aqua Units (see Docket Entry 26-2, ¶ 52), that Joseph Charles LLC (or that those Defendants associated with Joseph Charles LLC, lumped together (see id., ¶ 236)) "transferred to Second Earth, without substantial consideration, possession of the [Disputed] Units" (id., ¶ 106) and that "Haskin told the [state court] at the [temporary restraining order] hearing that the [Disputed] Units had been transferred to Second Earth" (id.). These allegations are insufficient to support a claim against any of the individual Defendants for any active role in the conversion.

### iii. Fraud and Violation of N.C. Gen. Stat. § 75-1.1 based on Fraud

The Second Amended Complaint sets out what Defendants have referred to as a "laundry list" of alleged "misrepresentations" (Docket Entry 17 at 12), each of which Plaintiffs contend provides the basis for a fraud claim (see Docket Entry 26-2, ¶ 133). Plaintiffs also assert a claim for violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1, based on the same fraud allegations. (See Docket Entry 26-2, ¶¶ 142-48.)

Under North Carolina law, fraud requires the following elements: "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." Ragsdale v. Kennedy, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974). Moreover, "[i]n alleging fraud

-28-

. . ., a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). "The 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false misrepresentations and what he obtained thereby.'" Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure: Civil § 1297, at 590 (2d ed. 1990)). Furthermore, in accordance with Rule 9(b), where a fraud claim stems from an alleged failure to fulfill an agreement, the complaint must contain specific factual matter to permit the plausible inference that the defendant did not intend to honor the agreement at the time it was made. See Strum, 15 F.3d at 331 ("The Federal Rules of Civil Procedure require that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.' . . . Because [the plaintiff] has done nothing more than assert that [the defendant] never intended to honor its obligations under the [] agreement, the district court's dismissal of the [fraud-based] cause of action [under North Carolina law] was entirely appropriate." (quoting Fed. R. Civ. P. 9(b))); see also In re Inter-Act Elecs., Inc., No. 02-11557C-7G, 03-2035, 2004 WL 1052961, at *3 (Bankr. M.D.N.C. Mar. 30, 2004) (unpublished) ("In order to satisfy the requirements of Rule 9(b), a plaintiff asserting a fraud claim based upon the

defendant's alleged intent not to honor a contract must allege specific facts which demonstrate that at the time the agreement was made, the defendant intended not to perform the agreement.").

Defendants argue for dismissal of Plaintiffs' fraud claim(s) because (1) they consist of "conclusory statements devoid of factual support" (Docket Entry 21 at 11) that are "far too indefinite to make out a fraud claim" (Docket Entry 17 at 12) and (2) "there is no allegation that a particular defendant made a representation that was false at a particular time and no allegation that the individual knew it to be false" (Docket Entry 31 at 12). The "misrepresentations" identified by Plaintiffs in support of their fraud claim(s) appear as follows:

> (a) creating the Scheme and acting in furtherance of the Scheme; (b) failing to actively market [Bon Aqua's] Bon Aqua Water Treatment Systems for the benefit of [Bon Aqua]; (c) using Trade Secrets to irreparably harm [Bon Aqua] and its business, reputation and goodwill, and to benefit themselves in competition with [Bon Aqua]; (d) failing to keep confidential the Trade Secrets; (e) feigning cooperation with Plaintiffs in making presentations for sales of [Bon Aqua] [U]nits; (f) forming new entities (including Second Earth and [Joseph Charles], Inc.) through which they wrongfully transferred some or all of [Bon Aqua's] Trade Secrets, without notifying Plaintiffs; (g) making contacts and presentations about the so called "WRAP" water treatment system and failing to inform Plaintiffs about such contacts and presentations; (h) making presentations about [Bon Aqua] Units as if the corporate Defendants, or some of them, not [Bon Aqua], owned the rights to such units; (i) claiming that they owned copyrights owned by Mr. and Mrs. Lowenstein; (j) claiming to be interested in purchasing Plaintiffs' rights and assets relating to [Bon Aqua] and Aquadyne, though they were solely interested in misappropriating the Trade Secrets and competing with the businesses of [Bon Aqua] and Aquadyne; (k) using [Bon

Aqua]'s copyrighted Sales DVD, Sales CD and other
copyrighted materials as if they were their own; (l)
attempting to register as a trademark, "Bon Aqua V" for
an industrial-water purifying apparatus" [sic] without
confessing to the [United States Patent and Trademark
Office] [Bon Aqua]'s well-known prior use of the term
"Bon Aqua"; (m) purporting to use Bon Aqua as part of
such "trademark" for sales and marketing; (n) registering
Second Earth on thebluebook.com as having 20 years of
history in the business of water treatment systems and
listing Second Earth's product as "Bon Aqua"; [(o)]
claiming [Bon Aqua]'s clients as its own; and (p)
publishing false and defamatory statements about
Plaintiffs, the history of [Bon Aqua] and their business
practices.

(Docket Entry 26-2, ¶ 133.)

None of these allegations identify, with particularity, a
specific misrepresentation or concealment of a material fact by a
specific Defendant which said Defendant knew at the time to be
false and which allowed said Defendant to obtain something from
Plaintiffs, as required to state a claim. See Harrison, 176 F.3d
at 784; Ragsdale, 286 N.C. at 138, 209 S.E.2d at 500. In fact,
items (a)-(h) and (k)-(n) of Paragraph 133 (quoted above) do not
appear to reference a misrepresentation or concealment of a
material fact even in a vague sense. For other items within
Paragraph 133, such as "(i) claiming that they owned copyrights
owned by Mr. and Mrs. Lowenstein" and "[(o)] claiming [Bon Aqua]'s
clients as its own" (Docket Entry 26-2, ¶ 133), Plaintiffs do not
explain how they could have been deceived by Defendants asserting
something which Plaintiffs knew to be false - an essential element
of a fraud claim. See Ragsdale, 286 N.C. at 138, 209 S.E.2d at

500.  In sum, Plaintiffs' list of "misrepresentations" appears more accurately to constitute a general list of alleged wrongs.

Plaintiffs' allegation in item (j) of Paragraph 133, that Defendants "claim[ed] to be interested in purchasing Plaintiffs' rights and assets relating to [Bon Aqua] and Aquadyne, though they were solely interested in misappropriating the Trade Secrets and competing with the businesses of [Bon Aqua] and Aquadyne" (Docket Entry 26-2, ¶ 133) most nearly approaches a claim for fraud.  This allegation effectively asserts that Defendants fraudulently induced Plaintiffs to enter into certain agreements in order to obtain Plaintiffs' confidential business information.  However, other aspects of the Second Amended Complaint render any such claim implausible.

As noted above, where a fraud claim pertains to the alleged dishonoring of an agreement, the complaint must contain specific factual matter to permit the plausible inference that the defendant did not intend to honor the agreement at the time of its making.  See Strum, 15 F.3d at 331.  Here, Plaintiffs cite to "Complaint, ¶ 22" in stating that they have alleged "Nazario, Alexander and [Joseph Charles] LLC never intended to honor the terms of the Sales Agency Agreement . . . ."  (Docket Entry 28 at 9).  Similarly, Plaintiffs cite to "Complaint, ¶ 25" in stating that they have alleged "Defendants Nazario, Alexander, Shaffer and [Joseph Charles] LLC *never intended* to comply the with terms of such

-32-

Confidentiality Agreement." (Id. (emphasis in original).) These citations appear to refer to the Amended Verified Complaint (Docket Entry 7), rather than Plaintiffs' Second Amended Complaint (Docket Entry 26-2), and such allegations appear to have been removed from Plaintiffs' Second Amended Complaint (see id.). Moreover, Plaintiffs' brief lacks any argument regarding the sufficiency of their allegations with respect to the Option Agreement. (See Docket Entry 28.)

Regardless, Plaintiffs' Second Amended Complaint indicates that not until Nazario, Alexander and Shaffer joined with Frain, sometime between early November 2008 and December 30, 2009, did Defendants decide to misappropriate Plaintiffs' confidential information and to begin holding out the Bon Aqua Units as their own. (See Docket Entry 26-2, ¶¶ 63-64.) As the Sales Agency Agreement was entered into on April 25, 2008 (see Docket Entry 26-3 at 28-29), and the Option and Confidentiality Agreements were both entered into on June 2, 2008 (see id. at 48-55), Plaintiffs have failed to allege factual matter demonstrating that, at the time the Agreements were made, Defendants did not intend to perform. To the contrary, the allegations in the Second Amended Complaint reflect that Defendants did not develop the alleged scheme until after the Agreements existed. Accordingly, these events do not support a fraud claim.

Furthermore, to the extent Plaintiffs contend that Defendants' actions after the making of the Confidentiality Agreement constitute fraud, Plaintiffs have not alleged a sufficiently independent tort from their claim for breach of the Confidentiality Agreement.  See HPS Techs., Inc. v. E.I. Du Pont De Nemours and Co., No. 1:06CV1061, 2009 WL 3434280 (M.D.N.C. Oct. 20, 2009) (Sharp, M.J.) (unpublished), recommendation adopted in relevant part, slip op. (M.D.N.C. July 26, 2010) (Tilley, S.J.).  In HPS Technologies, the defendant, after receiving complaints from customers regarding its own solvent's strong odor, engaged in discussions to purchase the plaintiff's low-odor solvent.  Id. at *1.  In furtherance of these discussions, the parties entered into five confidentiality agreements between 1998 and 2004, each of which covered a one-year period and provided that the defendant would use such information only for evaluating a potential business relationship.  Id.  In 2006, the defendant began marketing a new solvent.  Id. at *2.  The plaintiff thereafter brought several claims, including breach of the confidentiality agreements, fraud (based on the defendant's "promises and misrepresentations to [the] [p]laintiff as part of its fraudulent plan and scheme to acquire [the] plaintiff's confidential and protected alternative solvent technology"), and violation of the UDTPA.  Id. at *4-11 (internal quotation marks omitted).

In deciding a motion for summary judgment, the Court noted

that, in North Carolina, "[t]ort claims are allowed only on claims which are 'identifiable' and 'distinct from the primary breach of contract claim.'" Id. at *10 (quoting Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 346 (4th Cir. 1998)). It further observed that the plaintiff's claims "arise out of the confidentiality agreements and the alleged breaches of those agreements. They are not independent torts as required by North Carolina law. They must therefore be dismissed on this ground . . . ." Id. (citing Broussard, 155 F.3d 331).

The facts and analysis in HPS Technology apply equally to this case and warrant the same disposition at the motion to dismiss stage. The Confidentiality Agreement addressed the handling of confidential information provided to Nazario and, thus, here, as in HPS Technology, Plaintiffs' fraud claims arise from what Plaintiffs allege were "promises and misrepresentations to Plaintiff[s] as part of [Defendants'] fraudulent plan and scheme to acquire [P]laintiff[s'] confidential [information]." HPS Technology, 2009 WL 3434280, at *7 (internal quotation marks omitted). Accordingly, Plaintiffs' claims for fraud cannot be separated from breach of the Confidentiality Agreement. "The tort claims that Plaintiff[s] attempt[] to advance in this action may be 'identifiable,' but they are not 'distinct from' the primary breach of contract . . . ." Id. at *10; accord Wilkins v. Wachovia Corp., No. 5:10-CV-249, 2011 WL 1134706, at *3 (E.D.N.C. Mar. 24, 2011)

(unpublished) ("As for the common law fraud claim in count V, plaintiff's allegations are grounded in defendants' conduct following execution of the investment management agreement. Even if defendants intentionally breached the investment management agreement, the crux of such matters is and always has been a contract dispute." (citations and quotation marks omitted)).

In addition to reviewing the specific assertions in Paragraph 133, the undersigned has reviewed the entirety of Plaintiffs' Second Amended Complaint and its related attachments and has failed to locate factual allegations sufficient to support a claim for fraud. As noted above, "[t]he 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false misrepresentations and what [the defendant] obtained thereby.'" Harrison, 176 F.3d at 784. The only other matter identified by Plaintiffs approaching these requirements concerns a letter agreement which allowed Haskin to obtain the Vendor Files. (See Docket Entry 26-2, ¶¶ 78, 79.) However, the Second Amended Complaint fails to allege even generally that Haskin never intended to comply with that letter agreement (see Docket Entry 26-2) and, instead, contains only a conclusory statement that Haskin "agreed to join with the [i]nitial [c]onspirators in the common scheme" (id., ¶ 76).

Finally, Plaintiffs may seek to rely on allegations with respect to a letter sent by Haskin after Plaintiffs confronted

-36-

Defendants regarding their actions as another basis for claiming fraud. (See id., ¶ 98.) More specifically, after Plaintiffs obtained information from a former client regarding a brochure sent by Second Earth which substantially mimicked Plaintiffs' own marketing material, Plaintiffs sent a letter to Defendants inquiring as to the matters raised in the current suit. (See Docket Entry 26-4 at 50-51.) In response, Plaintiffs allege that "Defendants (by and through Haskin): (a) denied any wrongful activity; (b) stated that Second Earth had no relationship with [Joseph Charles LLC]; (c) stated that Second Earth is not marketing or selling Bon Aqua Units; and (d) stated that Second Earth was marketing and attempting to sell a 'new concept of water treatment' that 'does not utilize [Bon Aqua's] product.'" (Docket Entry 26-2, ¶ 97.) Plaintiffs go on to allege that, "[a]t the time Haskin sent [said letter] to Plaintiffs, Haskin knew the representations in such letter to be false in all material respects." (Id., ¶ 98.) To the extent Plaintiffs allege fraud on these facts, they have failed to state a claim, because of the absence of any factual matter showing that they were actually deceived by Haskin's letter, see Ragsdale, 286 N.C. App. at 138, 209 S.E.2d at 500, or that Haskin received anything from them by way of said misrepresentations, see Harrison, 176 F.3d at 784.

In sum, Plaintiffs have failed to state a claim for fraud or for violation of the UDTPA based on fraud against any Defendant.

<u>iv. Violation of Chapter 66</u>

In their claim for "Violation of Chapter 66," Plaintiffs assert that "Defendants misappropriated Plaintiffs' Trade Secrets" in contravention of N.C. Gen. Stat. § 66-152, <u>et seq.</u> (Docket Entry 26-2, ¶¶ 162-72.) North Carolina law defines a trade secret as:

> [B]usiness or technical information including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:
>
> a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and
>
> b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C. Gen. Stat. § 66-152. Moreover, in this context, misappropriation means "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret." <u>Id.</u> Accordingly, "federal courts have required a party asserting a claim of trade secret misappropriation [under North Carolina law] to identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to

-38-

occur." Ikon Office Solutions, Inc. v. Konica Minolta Bus. Solutions, U.S.A., Inc., No. 3:08-CV-539-RLV-DCK, 2009 WL 4429156, at *4 (W.D.N.C. Nov. 25, 2009) (unpublished) (internal quotation marks omitted); accord, e.g., River's Edge Pharm., LLC v. Gorbec Pharm. Servs., Inc., No. 1:10CV991, 2012 WL 1439133, at *13 (M.D.N.C. Apr. 25, 2012) (unpublished) (Beaty, C.J.); Asheboro Paper & Packaging, Inc., v. Dickinson, 599 F. Supp. 2d 664, 676 (M.D.N.C. 2009) (Schroeder, J.).

In this case, Plaintiffs allege that Defendants "acquired, disclosed and/or used" certain of Bon Aqua's business or technical information, including:

(1) "copyrighted materials, know-how, marketing materials, training materials, customer lists, pricing lists, systems and other trade secrets and confidential information obtained by means of the Agreements" (Docket Entry 26-2, ¶ 163(a));

(2) "[a]ll technical and business information relating to Bon Aqua International water treatment products including but not limited to, the manufacturing process, ideas, patentable ideas, trade secrets, proprietary ideas and inventions, drawings and/or illustrations, patent searches, existing and/or contemplated products and services, research and development, production, costs, profit and margin information, finances and financial projections, marketing, and current or future business plans and models provided

to Defendants, or any of them, by means of the Confidentiality Agreement" (id., ¶ 163(b));

(3) "[t]he Vendor Files" (id., ¶ 163(c));

(4) "[t]he Dealer and Distributor Files" (id., ¶ 163(d)); and

(5) information regarding Bon Aqua's manufacturing rights, licenses, business practices, and copyrights requested by e-mail by Nazario on September 24, 2009 (the "September 24th Records") (id., ¶ 163(e); see also id., ¶¶ 81, 83).

### a. Joseph Charles LLC and Second Earth

Certain of the foregoing categories do not sufficiently identify a trade secret. Specifically, the descriptions of items in categories (1) and (2) simply do not adequately inform Defendants about what they allegedly misappropriated. See Akzo Nobel Coatings Inc. v. Rogers, No. 11 CVS 3013, 2011 WL 5316772, at *24 (N.C. Super. Nov. 3, 2011) (unpublished) (finding description of trade secrets as the plaintiffs' "proprietary formulas, methodologies, customer and pricing data and other confidential information . . . deriv[ing] independent or actual or potential commercial value from not being generally known or readily ascertainable" insufficiently vague). Nor can Plaintiffs plausibly maintain a trade secret claim based on their customer lists given their apparent public docketing. (See Docket Entry 26-3 at 8-23.)

With respect to the remaining categories, Plaintiffs have adequately alleged facts to support a trade secrets claim against

-40-

Joseph Charles LLC and Second Earth. Specifically, Plaintiffs have sufficiently described the Vendor Files (see Docket Entry 26-2, ¶ 79), the Dealer and Distributor Files (see id., ¶ 80), and the September 24th Records (see id., ¶¶ 81-83) to permit Defendants to identify the alleged trade secret-protected material. Furthermore, allegations within the Second Amended Complaint support the assertions (1) that Joseph Charles LLC, through Nazario, sought those categories of information by way of the Confidentiality Agreement, thereby indicating that it (and he) knew or should have known of the information's status as material with potential commercial value attributable to the protection from disclosure by Plaintiffs (id., ¶¶ 78-86) and (2) that Joseph Charles LLC used or disclosed said information without the express or implied consent of Bon Aqua (id., ¶¶ 91, 94, 105). Finally, the Second Amended Complaint also sufficiently alleges a trade secrets claim against Second Earth as to the same materials (i.e., the Vendor Files, the Dealer and Distributor Files, and the September 24th Records) given (1) the alleged inter-relationship between Joseph Charles LLC and Second Earth at the time of Nazario's actions in acquiring that information (id., ¶¶ 79-83) and (2) Second Earth's alleged use of that information (id., ¶¶ 94, 105).

### b. Individual Defendants

The Second Amended Complaint contains insufficient factual matter to support a trade secrets claim against any of the

individual Defendants for direct involvement in any such tortious conduct. (See Docket Entry 26-2.) In this regard, the Second Amended Complaint comes closest as to Nazario, whom it alleges: (1) accepted the Vendor Files (id., ¶ 79); (2) requested and received the Dealer and Distributor Files (id., ¶ 80); and (3) requested and later received the September 24th Records (id., ¶¶ 81, 83, 85). However, the Second Amended Complaint reflects that Nazario acquired such information through Bon Aqua's "express or implied authority or consent," N.C. Gen. Stat. § 66-152, and the Second Amended Complaint lacks factual matter regarding Nazario's subsequent use or disclosure of any such information (see Docket Entry 26-2). In sum, the Second Amended Complaint offers insufficient factual allegations that any of the individual Defendants played an active role in misappropriating Bon Aqua's purported trade secrets.

### v. Unfair Competition

Plaintiffs' fifth, ninth and tenth claims for relief allege "Unfair Competition/Passing Off" (see Docket Entry 26-2, ¶¶ 149-53), "Common Law Trademark" (see id., ¶¶ 187-97), and "False Designation of Origin/False Description (15 U.S.C. § 1125(a))" (see id., ¶¶ 198-202), respectively. The factual circumstances surrounding these three claims arise from Defendants' alleged adoption of the business history and/or products of Plaintiffs as

their own.[16]  Because these claims involve similar issues that focus primarily on the likelihood of consumer confusion, the discussion that follows applies to all three.

As an initial matter, the allegations at issue more accurately concern "reverse passing off" rather than "passing off."  Reverse passing off occurs when "a 'producer misrepresents someone else's goods or services as his own.'" Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc., 618 F.3d 417, 438 (4th Cir. 2010) (quoting Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 28 n.1 (2003)).[17]  "Although the nature of the deception alleged in this case differs from that found in the usual case of 'passing off,' the underlying nature of the wrong is the same.  Both cases involve the misappropriation of the benefits which flow from the quality of a competitor's product." Harrington Mfg. Co., Inc. v. Powell Mfg. Co., Inc., 38 N.C. App. 393, 404-05, 248 S.E.2d 739, 746 (N.C. App. 1978).

Moreover, North Carolina law recognizes that "[t]he fundamental question in cases of trade-mark or unfair competition . . . is whether the public is being misled and deceived, so that

---

[16] Such conduct concerns matters sufficiently distinct from Plaintiffs' breach of contract claims to fall within the independent tort exception.  See generally Strum, 15 F.3d at 330.

[17] In contrast, "[p]assing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's." Dastar Corp., 539 U.S. at 28 n.1; accord Henderson v. United States Fid. & Guar. Co., 124 N.C. App. 103, 108, 476 S.E.2d 459, 462 (1996).

a defendant is in effect taking advantage of the good will and business reputation that a complainant has built up through service or advertising in any manner regarded as lawful and proper." Carolina Aniline & Extract Co. v. Ray, 221 N.C. 269, 20 S.E.2d 59, 61-62 (1942) (quoting Anheuser-Busch v. Budweiser Malt Prods. Corp., D.C., 287 F. 243, 246 (S.D.N.Y. 1921)). Similarly, the federal law cited by Plaintiffs provides that:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device or any combination thereof, or any false designation of origin, false or misleading description of fact, which is--
>
> (A) likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

Accordingly, for purposes of Plaintiffs' instant, related state and federal causes of action, "a reverse passing off claim requires [them] to prove four elements: (1) that the work at issue originated with [them]; (2) that origin of the work was falsely designated by [a] [Defendant]; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that [they]

-44-

[were] harmed [or were likely to be harmed] by [a] [D]efendant's false designation of origin." <u>Universal Furniture</u>, 618 F.3d at 438 (quoting <u>Syngenta Seeds, Inc. v. Delta Cotton Coop., Inc.</u>, 457 F.3d 1269, 1277 (Fed. Cir. 2006)); <u>see also</u> <u>Moseley v. V Secret Catalogue, Inc.</u>, 537 U.S. 418, 428 (2003) ("Traditional trademark infringement law is a part of the broader law of unfair competition that has its sources in English common law, and was largely codified in the Trademark Act of 1946 (Lanham Act)." (internal citation omitted)).

### a. Joseph Charles LLC

Under these standards, Plaintiffs have alleged insufficient facts to support reverse passing off-based claim(s) under federal or North Carolina law against Joseph Charles LLC. Plaintiffs' factual assertions regarding Defendants' efforts to adopt Plaintiffs' products and/or history as Defendants' own involve specific references solely to Second Earth. For example, the Second Amended Complaint states:

> The acts of <u>Defendants</u> as alleged herein, including: (a) advertising that <u>Second Earth's</u> so-called "WRAP" system is identical and/or better than the Bon Aqua Water Treatment System; (b) simulating the goodwill of Bon Aqua so as to pass off <u>Defendants</u>' goods as those of [Bon Aqua], or, (c) conversely, depriving [Bon Aqua] of the advertising value of its name and the goodwill that otherwise would stem from public knowledge of the true source of a satisfactory product by attempting to pass off [Bon Aqua]'s Bon Aqua Units as those of <u>Second Earth</u>; (d) taking advantage of the goodwill and business reputation of [Bon Aqua] by unfair means, including claiming to potential clients to be a manufacturer or authorized dealer of Bon Aqua Units, (e) implying that

-45-

> Second Earth had a relationship with [Bon Aqua] that did
> not, in fact, exist, (f) impersonating [Bon Aqua] in the
> marketplace by claiming to have been business for as long
> as Plaintiffs and as having had Plaintiffs' clients as
> their own, and (g) otherwise selling Bon Aqua Units
> and/or doing business as [Bon Aqua] all constitute unfair
> competition.

(Docket Entry 26-2, ¶ 150 (emphasis added).)

Elsewhere in the Second Amended Complaint, Plaintiffs allege that Defendants "pass[ed] off the Bon Aqua Water Treatment System as their own; specifically, as being a supposedly new and improved 'WRAP' water treatment system created, manufactured and marketed by Second Earth." (Id., ¶ 72 (emphasis added).) Further, Plaintiffs allege that, "[i]n an even more glaring, and brazen, example of the lengths to which Defendants have gone to steal [Bon Aqua]'s goodwill, in an advertisement for Second Earth . . ., Defendants have claimed . . . that Second Earth was established in 1988 (the year Aquadyne was created) and that their clients have included Meredith College and Starmount Company (the former [Bon Aqua] clients [Bon Aqua] had introduced to Nazario)." (Id., ¶ 110 (emphasis added).) As the Second Amended Complaint identifies actions amounting to reverse passing off only by Second Earth, Plaintiffs have alleged insufficient facts to support claim(s) under federal or North Carolina law based on reverse passing off against Joseph Charles LLC.

-46-

## b. Second Earth

Plaintiffs, however, have alleged sufficient facts to support such claims against Second Earth. Specifically, the Second Amended Complaint asserts that: (1) Second Earth sales presentations exhibited Bon Aqua Units as products created, manufactured and marketed by Second Earth (id., ¶ 72); (2) the Second Earth website adopted Bon Aqua's and/or Aquadyne's history (id., ¶ 110); (3) Second Earth utilized sales brochures substantially similar to Bon Aqua's (see Docket Entry 26-4 at 48-49); and (4) actual confusion resulted among the public (Docket Entry 26-2, ¶¶ 115-17). Such allegations, combined with the previously-quoted material in Paragraph 150 of the Second Amended Complaint, suffice to support Plaintiffs' instant claims against Second Earth at this stage.

## c. Individual Defendants

The Second Amended Complaint also alleges factual matter sufficient to support claims against Nazario and Frain for their active participation in the reverse passing off, but does not contain adequate factual allegations to sustain such claims against the remaining individual Defendants on a direct-participation theory. Specifically, the Second Amended Complaint alleges that "Nazario and Frain continued to travel around the country making contacts and presentations about the Bon Aqua [Units]" (id., ¶ 71), which Plaintiffs' believed "were being made to promote [Bon Aqua's] business" (id.), but which were really "intended to build and grow

the businesses of the [Defendants' entities] by passing off the Bon Aqua [Units] as their own; specifically, as being a supposedly new and improved 'WRAP' water treatment system created, manufactured and marketed by Second Earth" (id., ¶ 72). As to the remaining individual Defendants, however, the Second Amended Complaint lacks factual matter showing any direct participation in the alleged reverse passing off. (See Docket Entry 26-2.)

### vi. Violation of N.C. Gen. Stat. § 75-1.1 for Unfair Competition/Passing Off

The Second Amended Complaint also asserts a claim for a violation of the UDTPA premised on reverse passing off. (See id., ¶¶ 154-61.) "[A UDTPA] claim under [North Carolina law] requires proof of three elements: (1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) proximately causing actual injury to plaintiff or plaintiff's business." AG Sys., Inc. v. United Decorative Plastics Corp., 55 F.3d 970, 974 (4th Cir. 1995) (internal brackets and quotation marks omitted); accord Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148 (4th Cir. 1987) (citing Marshall v. Miller, 302 N.C. 539, 276 S.E.2d 397, 403 (1981), and Overstreet v. Brookland, Inc., 52 N.C. App. 444, 452-53, 279 S.E.2d 1, 7 (1981)). "[T]he determination of whether a particular action constitutes an unfair or deceptive

-48-

trade practices is a question of law." South Atl. Ltd. P'ship of Tenn., L.P. v. Riese, 284 F.3d 518, 529 (4th Cir. 2002); see also Gray v. North Carolina Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000) ("Ordinarily, once the jury has determined the facts of a case, the court, based on the jury's findings, then determines as a matter of law, whether the defendant engaged in unfair or deceptive practices in or affecting commerce.").

### a. Joseph Charles LLC and Individual Defendants other than Nazario and Frain

As set out in Section III.C.v.a. and III.C.v.c., Plaintiffs have alleged insufficient factual matter to support any claim(s) for unfair competition based on reverse passing off against Joseph Charles LLC and any individual Defendants other than Nazario and Frain. Accordingly, Plaintiffs cannot proceed against Joseph Charles LLC and individual Defendants other than Nazario and Frain under the UDTPA on a reverse passing off theory.

### b. Second Earth, Nazario and Frain

Plaintiffs have also alleged insufficient factual matter to support a UDTPA claim against Second Earth, Nazario and/or Frain based on reverse passing off. Although reverse passing off satisfies the first element of a UDTPA claim (i.e., an unfair and/or deceptive act), see Universal Furniture, 618 F.3d at 439-40 (affirming finding of UDTPA violation where the defendant displayed rival company's furniture as its own), and the allegations taken

-49-

together support an allegation that the reverse passing off occurred in or affecting commerce (see, e.g., Docket Entry 26-2, ¶ 113), the Second Amended Complaint fails to allege actual damages from such conduct (see id., ¶¶ 115-17). Allegations of marketplace confusion and vague assertions of harm do not suffice because actual damages constitute a necessary element of a UDTPA claim. See Kirkman v. Tison, No. 1:09CV886, 2012 WL 4891624, at *11 (M.D.N.C. Oct. 15, 2012) (unpublished) (citing cases holding that "North Carolina law requires proof of actual damages as an element of a UDTPA claim").

Although Plaintiffs have alleged instances of customer confusion and have asserted that, through its passing off of Bon Aqua's products as its own, "Second Earth . . ., through its incompetence, is diminishing the value of the [Bon Aqua] brand" (Docket Entry 26-2, ¶ 117), the Second Amended Complaint offers no factual matter to show that such actions resulted in actual injury to Plaintiffs. To the contrary, the Second Amended Complaint alleges scenarios where Plaintiffs rectified any confusion prior to any loss of sales. (See id., ¶¶ 115-17.) The absence of any showing that Plaintiffs suffered actual damages from any reverse passing off warrants dismissal of Plaintiffs' UDTPA claim based on such conduct.[18]

---

[18] The actual damages element of a UDTPA claim distinguishes it from Plaintiffs' federal statutory and state common law unfair competition claims based on reverse passing off. Compare Xoom, (continued...)

Plaintiffs claim copyright infringement under 17 U.S.C. § 501. (See Docket Entry 26-2, ¶¶ 173-86.)  "To establish a prima facie case of copyright infringement, a plaintiff must demonstrate that (1) 'he owned the copyright to the work that was allegedly copied,' and (2) 'the defendant copied protected elements of the work.'" Billco Int'l, Inc. v. Charles Prods., Inc., 776 F. Supp. 2d 105, 110 (D. Md. 2011) (quoting Bouchat v. Baltimore Ravens, Inc., 241 F.3d 350, 353 (4th Cir. 2001)).

The Second Amended Complaint alleges that Defendants infringed Plaintiffs' copyrights with respect to:

(1) "a VHS sales video, entitled 'Bon Aqua Naturally,' copyright registration number TX-3-685-402 issued effective May 28, 1993" (Docket Entry 26-2, ¶ 174);

---

[18](...continued)
Inc. v. Imageline, Inc., 323 F.3d 279, 286 (4th Cir. 2003) (recognizing that proof of damages does not constitute element required to establish Lanham Act violation (citing 15 U.S.C. §§ 1117, 1125)), abrogated in part on other grounds, Reed Elsevier, Inc. v. Muchnick, ___ U.S. ___, 130 S.Ct. 1237 (2010), Rorie v. Edwards, No. 01-40907, 48 F. App'x 201 (table), 2002 WL 31016457, at *4 (5th Cir. Aug. 13, 2002) (unpublished) (upholding award of nominal damages under Lanham Act), and Hawkins v. Hawkins, 101 N.C. App. 529, 533, 400 S.E.2d 472, 475 (1991) (stating that not all torts "include actual damages as an essential element"), with Kirkman, 2012 WL 4891624, at *11 (citing cases establishing that "North Carolina law requires proof of actual damages as an element of UDTPA claim" and precludes nominal damages).  Thus, although the allegations in the Second Amended Complaint support Plaintiffs' federal statutory and state common law reverse passing off claims, the lack of factual matter regarding actual damages defeats Plaintiffs' UDTPA claim based on reverse passing off.

(2) "the Bon Aqua website, copyright registration number TX-6-401-857 issued effective October 25, 2005" (id.);

(3) "a sales CD . . . entitled 'Talking Heads' (narrated by Mr. Lowenstein), copyright registration number TX-6-483-800 issued effective October 25, 2005" (id.); and

(4) "the Sales DVD for which a registered copyright was applied on July 2, 2008 and which application was assigned case number 1-740-507-71" (id.).[19]

In support of their contentions, Plaintiffs have included as attachments to the Second Amended Complaint:

(i) a copy of the Certificate of Registration with respect to the VHS sales video, "Bon Aqua Naturally" (Docket Entry 26-4 at 9-11);

(ii) a copy of the Certificate of Registration for the sales CD "Talking Heads" (id. at 15-17);

(iii) a copy of the Certificate of Registration for the website http://www.bonaqua.com (id. at 12-14);

---

[19] The Second Amended Complaint alleges that "Defendants reproduced and distributed [the copyrighted material], or copyrighted portions thereof, via (i) piracy on the Second Earth website, (ii) publication on other websites, (iii) written advertisements, and (iv) other methods." (Docket Entry 26-2, ¶ 176.) It also alleges that the Second Earth website contained a link to videos which included "copyrighted material from [Bon Aqua]'s Sales DVD and 'Talking Heads' training video, which, upon information and belief, Second Earth had copied, without [Bon Aqua]'s permission, from the [Bon Aqua] website onto the Second Earth website." (Id., ¶ 102.)

(iv) a copy of the pending copyright application with respect to the Sales DVD (id. at 24-27); and

(v) copies of screen shots of the Second Earth website showing use of the Bon Aqua logo (id. at 54-61).

a. Joseph Charles LLC

Similar to Plaintiffs' claims under North Carolina and federal law based on conduct involving reverse passing off, the entirety of the factual assertions in the Second Amended Complaint regarding copyright infringement by a corporate Defendant pertain solely to Second Earth. (See id., ¶¶ 99, 102, 176.) As a result, Plaintiffs' claim for copyright infringement with respect to Joseph Charles LLC fails as a matter of law.

b. Second Earth

Plaintiffs have alleged sufficient facts to support a claim for copyright infringement against Second Earth with respect to the Bon Aqua website, the Talking Heads training video, and the Sales DVD. The Second Amended Complaint contains factual matter that would establish use of Plaintiffs' copyrighted material on Second Earth's website. (See Docket Entry 26-2, ¶¶ 99, 176, 201.) Said allegations, in conjunction with Plaintiffs' copyright registrations (Docket Entry 26-4 at 9-17, 24-27), and screen shots from Second Earth's website (Docket Entry 26-4 at 54-61) satisfy the required elements. However, as to the "Bon Aqua Naturally" video, the Second Amended Complaint lacks any allegation that any

-53-

Defendant used said video.  (See Docket Entry 26-2.)  The Court

thus should dismiss that portion of Plaintiffs' copyright claim.[20]

### c. Individual Defendants

The Second Amended Complaint does not contain factual matter

regarding any individual Defendants' participation in the alleged

copyright infringement.  Rather, the allegations in the Second

Amended Complaint concern the use of Plaintiffs' copyrighted

material on the Second Earth website perpetrated by "Defendants"

generally.  (See Docket Entry 26-2, ¶¶ 176-81.)  Accordingly,

Plaintiffs have failed to state a claim for copyright infringement

against any of the individual Defendants.

---

[20] Defendants contend that "Plaintiffs [sic] copyright claim
is an attempt to label activities contemplated by the Agreements
and consistent with those Agreements as 'without prior approval or
authorization of Plaintiffs'" (Docket Entry 31 at 18 (quoting
Docket Entry 26-2, ¶ 45)); however, disputes regarding the
authorization Plaintiffs may have given Defendants fall beyond the
scope of a motion to dismiss.  See generally American Int'l
Pictures v. Foreman, 576 F.2d 661, 665 (5th Cir. 1978) ("[B]ecause
copyright law favors the rights of the copyright holder, the person
claiming authority to copy . . . generally must show that his
authority to do so flows from the copyright holder."); Maule v.
Philadelphia Media Holdings, LLC, 710 F. Supp. 2d 511, 516 (E.D.
Pa. 2008) ("[The plaintiff] alleges that he owns a copyright in the
American Commerce Photograph, and that [the defendant] copied it
without [the plaintiff's] authorization.  If [the plaintiff] can
prove the truth of these allegations, he has a viable claim of
copyright infringement against [the defendant].  Thus, the
allegations set forth in the Complaint are sufficient to survive
the motion to dismiss."); Tuff-N-Rumble Mgmt., Inc. v. Sugarhill
Music Publ'g Inc., 8 F. Supp. 2d 357, 362 (S.D.N.Y. 1998) ("[I]t
may be necessary for the Court to sort out . . . which party, if
any, owns rights and what those rights are.  It is premature,
however, at this stage, on a motion to dismiss . . ., to engage in
this fact-intensive and apparently hotly disputed endeavor.").

<u>viii. Civil Conspiracy</u>

Plaintiffs allege civil conspiracy in that "Defendants conspired and agreed with each other to effectuate their common Scheme and to take the actions described . . . in furtherance thereof." (Docket Entry 26-2, ¶ 228.) Under North Carolina law, civil conspiracy consists of the following elements: "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." <u>Strickland v. Hedrick</u>, 194 N.C. App. 1, 19, 669 S.E.2d 61, 72 (2008) (quotation marks and citations omitted); <u>see also</u> <u>Byrd v. Hopson</u>, 265 F. Supp. 2d 594, 599 (W.D.N.C. 2003) ("[I]n North Carolina, there is no independent cause of action for civil conspiracy; the claim can arise only where there is an underlying claim for unlawful conduct."). "[S]ince at least two persons must be present to form a conspiracy, a corporation cannot conspire with itself, just as an individual cannot conspire with himself." <u>State ex. rel. Cooper v. Ridgeway Brands Mfg., LLC</u>, 184 N.C. App. 613, 625, 646 S.E.2d 790, 799 (2007) (citing <u>Buschi v. Kirven</u>, 775 F.2d 1240, 1251-52 (4th Cir. 1985)), <u>rev'd in part on other grounds</u>, 362 N.C. 431, 666 S.E.2d 107 (2008)).

a. Joseph Charles LLC and Second Earth

Based on the foregoing standard, Plaintiffs have alleged sufficient facts to pursue a civil conspiracy theory of liability against Joseph Charles LLC and Second Earth in connection with Plaintiffs' state common law claims for reverse passing off, at least as an alternative theory to Plaintiffs' contention that Second Earth represents a successor entity to Joseph Charles LLC, see generally Homeland Training Ctr., LLC v. Summit Point Auto. Research Ctr., 594 F.3d 285, 295 (4th Cir. 2010) (stating that "the notion that an election has to be made at the time suit is filed is inconsistent with modern pleading practice" and that, under federal pleading standards, "plaintiffs are allowed to plead alternative theories of liability"). The Second Amended Complaint, read in the light most favorable to Plaintiffs as required in analyzing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), asserts a plausible claim that, at some point, Joseph Charles LLC and Second Earth worked in conjunction to facilitate Second Earth's adoption of Plaintiffs' history for purposes of competing unfairly in the marketplace.

Specifically, according to attachments to and allegations in the Second Amended Complaint:

(1) Joseph Charles LLC originally entered into the Sales Agency Agreement, the Option Agreement, and the Confidentiality Agreement (see Docket Entry 26-3 at 28-29, 48-55);

(2) Nazario served as the primary contact for Plaintiffs both in negotiations with Joseph Charles LLC and Second Earth (<u>see</u> Docket Entry 26-2, ¶¶ 33, 35, 36, 77);

(3) Nazario sent emails, apparently as a representative of both Joseph Charles LLC and Second Earth, from an "@secondearthinc.com" email address (<u>see</u> Docket Entry 26-4 at 4-8, 34-38); and

(4) Second Earth negotiated a Draft Letter of Intent to purchase the assets of Bon Aqua and Aquadyne which contemplated superseding the earlier agreements between Plaintiffs and Joseph Charles LLC (<u>see</u> <u>id.</u> at 23-25).

Such factual matter suffices at the pleading stage to permit Plaintiffs to maintain a theory that Joseph Charles LLC and Second Earth, at some point in time, existed separately and simultaneously. Thus, in light of the prior conclusion (discussed in Section III.C.v.b.) that the Second Amended Complaint contains sufficient allegations that Second Earth engaged in reverse passing off, the Court should allow Plaintiffs' state common law reverse passing off torts to proceed against Joseph Charles LLC on the theory that an agreement existed between Joseph Charles LLC and Second Earth to facilitate Second Earth's commission of those torts. If, however, Plaintiffs pursue breach of contract claims against Second Earth on a successor liability theory, questions could arise as to whether the intracorporate immunity doctrine

-57-

would work to bar Plaintiffs' civil conspiracy claim as "a corporation cannot conspire with itself," Ridgeway Brands, 184 N.C. App. 625, 646 S.E.2d at 799.

### b. Individual Defendants

Plaintiffs cannot proceed on a civil conspiracy theory of liability against the individual Defendants. As an initial matter, the intracorporate immunity doctrine bars any contention that the individual Defendants, as representatives of either Joseph Charles LLC or Second Earth, conspired with their respective corporate entity to commit the torts of which Plaintiff complains. See Alexander v. City of Greensboro, 762 F. Supp. 2d 764, 785 (M.D.N.C. 2011) ("An allegation that a corporation is conspiring with its agents, officers or employees is tantamount to accusing a corporation of conspiring with itself." (internal quotation marks omitted)). Because any conspiracy in this case necessarily involves both Joseph Charles LLC and Second Earth, none of the individual Defendants (who allegedly performed functions on behalf of at least one of those two entities) could form part of the conspiracy. In other words, the Second Amended Complaint lacks any allegations that the individual Defendants operated outside or independent of Joseph Charles LLC and/or Second Earth to effectuate the scheme alleged by Plaintiffs. Thus, liability premised on a civil conspiracy theory, should it exist at all, applies only to Joseph Charles LLC and Second Earth.

## ix. Fraudulent Transfer

Plaintiffs assert a claim for fraudulent transfer under the North Carolina Uniform Fraudulent Transfer Act ("UFTA"), N.C. Gen. Stat. § 39-23.1 <u>et seq.</u>, based on Joseph Charles LLC's transfer to Second Earth of the Disputed Units. (<u>See</u> Docket Entry 26-2, ¶ 244.) In pertinent part, the UFTA provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

N.C. Gen. Stat. § 39-23.5(a). Defendants did not address this claim (which Plaintiffs added by way of their Second Amended Complaint) in Defendants' responses in opposition to Plaintiffs' Motion for Leave to Amend. (<u>See</u> Docket Entries 31, 32.)

Moreover, it appears Plaintiffs have alleged sufficient facts to support a claim of fraudulent transfer between Joseph Charles LLC and Second Earth. The Second Amended Complaint asserts that, "[u]pon information and belief, [Joseph Charles, Inc., Joseph Charles LLC, Nazario, Alexander and Shaffer] transferred the [Disputed] Units to Second Earth after Defendants were threatened with suit by Plaintiffs." (Docket Entry 26-2, ¶ 236.) It also alleges that "Haskin told the [state court] at the [temporary restraining order] hearing that the [Disputed Units] had been transferred to Second Earth." (<u>Id.</u>, ¶ 106.) Finally, according to

-59-

the Second Amended Complaint, "[Joseph Charles LLC] was insolvent at the time of, or became insolvent shortly after, the transfer of the [Disputed Units] was made to Second Earth" (id., ¶ 241), and an attached email dated December 5, 2009, from Nazario states that "Joseph Charles is now insolvent" (Docket Entry 26-4 at 38).

Under these circumstances, Plaintiffs' claim for fraudulent transfer should proceed against Joseph Charles LLC and Second Earth. However, the Second Amended Complaint only broadly alleges that the individual Defendants associated with Joseph Charles LLC effectuated the transfer. (See Docket Entry 26-2, ¶ 236.) Said assertion provides an insufficient basis for maintaining the fraudulent transfer claim against any of the individual Defendants.

x. Declaratory Judgment - Right to Use Mark

The Second Amended Complaint requests a declaratory judgment regarding the Parties' rights to use the Bon Aqua mark. (Id., ¶¶ 203-08.) "[A] federal court may properly exercise jurisdiction in a declaratory judgment proceeding when three essentials are met: (1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction." Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 592 (4th Cir. 2004)

(internal citations omitted).  Given that Plaintiffs have alleged an actual controversy regarding use of the Bon Aqua mark and that subject-matter jurisdiction appears to exist, the Court should decline to take any action with respect to Plaintiffs' claim for a declaratory judgment related to the Bon Aqua mark at this stage of the proceedings.

### xi. Declaratory Judgment - False Markings

In addition, Plaintiffs seek "a declaratory judgment which declares and decrees that any false markings of the Bon Aqua [U]nits was done without the requisite intent to deceive necessary for such Plaintiffs to be held liable for false markings." (Docket Entry 26-2, ¶ 213.)  Moreover, Plaintiffs contend that an actual controversy exists because, "[u]ntil this issue is resolved, Plaintiffs face being called into court on the issue by Defendants, or anyone else with the filing fee for a qui tam action." (Id., ¶ 212.)  The Court, however, should dismiss Plaintiffs' declaratory judgement claim with respect to the false markings because it addressed that matter in connection with a separate action, Slack v. Bon Aqua Int'l, Inc., et al., No. 1:10CV516.

### xii. Temporary, Preliminary, Permanent and Mandatory Injunction

Plaintiffs ask this Court for a temporary, preliminary and permanent order: (a) restraining Defendants and persons acting through Defendants from selling the Bon Aqua Units, or using the name Bon Aqua or any Bon Aqua copyrights or other confidential

-61-

information (see Docket Entry 26-2, ¶ 216(a)); (b) restraining Defendants and persons acting through Defendants from contacting or communicating with any person about the Bon Aqua Units (see id., ¶ 216(b)); (c) directing Defendants to provide the Court and Plaintiffs a detailed list of persons contacted by Defendants or persons acting through Defendants about Bon Aqua (see id., ¶ 216(c)); and (d) directing Defendants to deliver to Plaintiffs the Disputed Units or funds in the amount of $250 for each unit not delivered or to make arrangements with Plaintiffs for an accounting as to the Disputed Units and their destruction at Defendants' expense (see id., ¶ 216(d)).

Under the Local Rules of this Court, "[a] prayer for a . . . preliminary injunction set forth in a pleading will not bring the issue before the Court prior to the time of trial. If a ruling before trial is desired, a party must separately file a motion and brief." M.D.N.C. LR65.1(a). Plaintiffs have not filed a separate motion and brief. (See Docket Entries dated Mar. 10, 2010, to present.) Furthermore, "[w]hile the claim for injunctive relief is set out as a separate cause of action, it is really nothing more than a form of possible relief that can be awarded once a party has prevailed on another cause of action." Housecalls Home Health Care, Inc. v. United States Dep't of Health and Human Servs., 515 F. Supp. 2d 616, 627 n.6 (M.D.N.C. 2007). Accordingly, the Court

should take no action with respect to Plaintiffs' claim for injunctive relief.

### xiii. Constructive Trust

The Second Amended Complaint asks the Court to impose a constructive trust "for the benefit of Plaintiffs in all of the Trade Secrets and any [Disputed Units], as well as any proceeds of the same" (Docket Entry 26-2, ¶ 224). (Docket Entry 26-2, ¶¶ 217-24.) The North Carolina Supreme Court has explained:

> A constructive trust is imposed to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust.

Roper v. Edwards, 323 N.C. 461, 465, 373 S.E.2d 423, 425 (1988) (citation and quotation marks omitted). "Fraud need not be shown if legal title has been obtained in violation of some duty owed to the one equitably entitled." Id.; see also Locke v. Glenn, No. COA05-1555, 178 N.C. App. 741 (table), 632 S.E.2d 600 (table), 2006 WL 2129848, at *4 (Aug. 1, 2006) (unpublished) ("Where certain facts exist evincing that one has obtained legal title to property against equity and good conscience, the imposition of a constructive trust is wholly appropriate, and actual fraud need not be established."). "Furthermore, a constructive trust may be imposed against anyone who 'in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold

-63-

and enjoy.'" <u>Myers v. Myers</u>, ___ N.C. App. ___, ___, 714 S.E.2d 194, 201 (2011) (quoting <u>Electric Co. v. Construction Co.</u>, 267 N.C. 714, 719, 148 S.E.2d 856, 860 (1966)).

Defendants contend that Plaintiffs' constructive trust claim must fail because the underlying claims fail. (<u>See</u> Docket Entry 17 at 18-19; Docket Entry 20 at 19.) Given the foregoing conclusions that Plaintiffs have plausibly asserted that Joseph Charles LLC and/or Second Earth may have come into possession of the Disputed Units and/or trademarks by unjust means, a constructive trust may be appropriate in this case. In essence, the propriety of such relief ultimately turns on the resolution of Plaintiffs' surviving tort claims. Accordingly, the Court should refrain from taking any action with respect to Plaintiffs' claim for a constructive trust at this time.

## D. Piercing the Corporate Veil

The Second Amended Complaint seeks to impose liability against Nazario, Alexander and Shaffer based on a corporate veil-piercing theory. Specifically, it states that:

> Joseph Charles LLC was a sham corporation which was created to perpetrate fraud against Plaintiffs. In addition, Joseph Charles LLC did not observe corporate formalities, nor did it have adequate capitalization; therefore, it was sham entity wholly controlled by and the alter ego of Nazario, Alexander and Shaffer. The allegations herein that are asserted against Joseph Charles LLC are, therefore, asserted as well against Nazario, Alexander and Shaffer under the principles of piercing the corporate veil.

(Docket Entry 26-2, ¶ 121.)

-64-

North Carolina law does recognize that, "in a few instances, exceptions to the general rule of corporate insularity may be made when applying the corporate fiction would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some equitable claim." Ridgeway Brands, 362 N.C. at 439, 666 S.E.2d at 112-13 (internal quotation marks omitted). In this regard, North Carolina follows the instrumentality rule for piercing the corporate veil. Glenn v. Wagner, 313 N.C. 450, 455, 329 S.E.2d 326, 330 (1985). More specifically, "when a corporation operates as the mere instrumentality or alter ego of its sole or dominant shareholder 'and a shield for his activities in violation of the declared public policy or statute of [North Carolina], the corporate entity will be disregarded and the corporation and the shareholder treated as one and the same person.'" Capparelli v. AmeriFirst Home Improvement Fin. Co., 535 F. Supp. 2d 554, 561 (E.D.N.C. 2008) (quoting Henderson v. Security Mortg. & Fin. Co., 273 N.C. 253, 260, 160 S.E.2d 39, 44 (1968)). This standard permits the disregarding of the corporate form when (1) a shareholder has "complete domination" over the "policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own," (2) the shareholder used this control to commit a wrong in contravention of the plaintiff's legal rights, and (3) the wrong proximately caused the plaintiff's injury

or loss.  <u>Glenn</u>, 313 N.C. at 455, 329 S.E.2d at 330.

Under <u>Iqbal</u>, the above-quoted statements in Paragraph 121 of the Second Amended Complaint are too conclusory on their own to pierce the corporate veil as to Joseph Charles LLC.  Turning to the allegations contained elsewhere in the Second Amended Complaint and its related attachments, it appears the following factual matter might bear on the analysis required by the governing standard:

(1) the substantial involvement of Nazario on behalf of Joseph Charles LLC in negotiations with Plaintiffs, as evidenced by numerous allegations within the Second Amended Complaint and attachments thereto (<u>see, e.g.,</u> Docket Entry 26-2, ¶¶ 12, 34-36, 38-39, 45-46, 77-78, 83, 92-93; Docket Entry 26-3 at 37-40; Docket Entry 26-4 at 4-8, 18-20, 26-33, 37-38);

(2) allegations that "Nazario is, or was, a member and manager of [Joseph Charles LLC] [and] a principal shareholder and officer of [Joseph Charles Inc.]" (Docket Entry 26-2, ¶ 12);

(3) ownership interest in Joseph Charles LLC by Charles Alexander, as evidenced by the indication in the relevant contracts that he was a member/manager of said entity (<u>see</u> Docket Entry 26-3 at 52, 55);

(4) statements by Nazario that Joseph Charles LLC is insolvent (<u>see</u> Docket Entry 26-4 at 38);

(5) allegations that "Nazario remained the <u>only</u> contact for

the Lowensteins in connection with the feigned interest to proceed with the purchase" (Docket Entry 26-2, ¶ 77) (emphasis added); and

(6) a draft Letter of Intent to Purchase Bon Aqua and Aquadyne, sent by Nazario, for entry by Second Earth, which contemplates superseding and replacing "[a]ll written and oral Agreements between the Lowenstein's [sic] and Joseph Charles, LLC, Joseph F. Nazario and Charles Alexander, including, but not limited to, the Option Agreement" (Docket Entry 26-4 at 23).

The foregoing factual allegations, however, provide an insufficient basis to pierce the corporate veil as to Joseph Charles LLC for purposes of imposing liability on Nazario, Alexander or Shaffer. First, virtually all of the factual matter in or attached to the Second Amended Complaint that appears relevant to the corporate veil piercing issue involves only Nazario. In fact, the Second Amended Complaint offers no indication that any Defendant, with the exception of Nazario, exercised any level of control over Joseph Charles LLC. (See Docket Entry 26-2). In addition, the Second Amended Complaint contains no factual matter to support Plaintiffs' conclusory allegation that Joseph Charles LLC failed to observe corporate formalities. (See id.) Finally, with respect to Nazario, although Plaintiffs allege he had substantial involvement in the negotiations between Plaintiffs and Joseph Charles LLC, as well as

an ownership interest in Joseph Charles LLC, these allegations do not tend to show the "complete domination" required by <u>Glenn</u>.

Under these circumstances, the Court should conclude that Plaintiffs have failed to allege facts that would permit the piercing of the corporate veil as to Joseph Charles LLC.

### IV. Motion for Initial Pretrial Conference

"Plaintiffs Bon Aqua [], [Ms.] Lowenstein and [Mr.] Lowenstein, by and through their attorneys, [] move the Court for an initial pretrial conference and initial pretrial order pursuant to Rules 16(b) and 26(f) of the Federal Rules of Civil Procedure and Local Rules 7.3, 16.1, and 16.2." (Docket Entry 35 at 1.) Specifically, Plaintiffs ask that:

(1) "the Court direct the [P]arties that an initial pretrial conference will be held in th[is] matter at 9:30, November 26, 2012, or as soon thereafter as is practicable for the Court" (<u>id.</u> at 3); and

(2) "the Court further direct the [P]arties that they must hold their [Rule] 26(f) conference at least 14 days before such scheduled initial pretrial conference and submit to the [C]ourt their report(s) within 10 days thereafter as required by [M.D.N.C.] LR 16.1(b)" (<u>id.</u>).

In light of the conclusion that this case should proceed as to some claims, an initial pretrial conference will be scheduled.

## V. Conclusion

The Second Amended Complaint (Docket Entry 26-2) will be accepted. A review of the allegations in and attachments to said pleading reveals that Plaintiffs have alleged sufficient facts to sustain certain claims against Joseph Charles LLC, Second Earth, Nazario and Frain; however, other claims fail as a matter of law. Finally, Plaintiffs' Notice of Partial Voluntary Dismissal (Parties) Without Prejudice (Docket Entry 24) has rendered aspects of Defendants' dismissal motions moot.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Leave to File Second Amended Complaint (Docket Entry 26) is **GRANTED** and the Clerk shall docket the proposed Second Amended Complaint attached to Plaintiffs' Motion for Leave to File Second Amended Complaint (Docket Entry 26-2) as a Second Amended Complaint along with the relevant attachments thereto (Docket Entries 26-3, 26-4).

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Initial Pretrial Conference (Docket Entry 35) is **GRANTED** and the Clerk shall set this matter for an initial pretrial conference before the undersigned United States Magistrate Judge on March 25, 2013, at 9:30 a.m.

**IT IS RECOMMENDED** that the Motion to Dismiss Defendants Tucker, Hargett and Ms. Nazario (Docket Entry 18) and the JC Defendants' Motion to Dismiss (Docket Entry 20), to the extent it

-69-

addresses Plaintiffs' claims against Tim Tucker, Christopher Hargett, and Elena Nazario, be **DENIED AS MOOT.**

**IT IS FURTHER RECOMMENDED** that the Motion to Dismiss filed by Defendants Second Earth, Inc., Doug Frain and Robert W. Haskin, Jr. (Docket Entry 16) and the JC Defendants' Motion to Dismiss filed by Defendants Joseph Nazario, Elena Nazario, Charles M. Alexander, Rodney S. Shaffer, Joseph Charles, LLC, Tim Tucker, Christopher Hargett, and Joseph Charles, Inc. (Docket Entry 20) (to the extent it is not moot) be **GRANTED IN PART** and **DENIED IN PART** in that:

(1) all claims against Charles M. Alexander, Rodney S. Shaffer, and Robert W. Haskin, Jr. should be dismissed and they should be terminated as Defendants;

(2) all claims against Joseph Charles Inc. should be dismissed as duplicative of Plaintiffs' claims against Joseph Charles LLC and Joseph Charles Inc. should be terminated as a Defendant;

(3) Plaintiffs' claims against Joseph Charles LLC for "Breach of Contract," "Conversion" (as to the Disputed Units), "Unfair Competition/Passing Off" (on a civil conspiracy theory), "Violation of Chapter 66" (as to the Vendor Files, the Dealer and Distributor Files, and the September 24th Records), "Common Law Trademark" (on a civil conspiracy theory), "Declaratory Judgment - Right to Use Mark," "Temporary, Preliminary, Permanent, and

Mandatory Injunction," and "Constructive Trust" should proceed;

(4) Plaintiffs' claims against Second Earth, Inc. for "Breach of Contract," "Conversion" (as to the Disputed Units), "Unfair Competition/Passing Off," "Violation of Chapter 66" (as to the Vendor Files, the Dealer and Distributor Files, and the September 24th Records), "Copyright Infringement - 17 U.S.C. § 501" (as to the Bon Aqua website, the Talking Heads training video, and the Sales DVD), "Common Law Trademark," "False Designation of Origin/False Description (15 U.S.C. § 1125(a))," "Declaratory Judgment - Right to Use Mark," "Temporary, Preliminary, Permanent, and Mandatory Injunction," and "Constructive Trust" should proceed;

(5) Plaintiffs' claims against Joseph Nazario and Doug Frain for "Unfair Competition/Passing Off," "Common Law Trademark," and "False Designation of Origin/False Description (15 U.S.C. § 1125(a))" should proceed but all other claims against Nazario and Frain should be dismissed; and

(6) Plaintiffs' claims for "Conversion" (as to anything other than the Disputed Units), "Fraud," "Violation of N.C. Gen. Stat. § 75-1.1 for Fraud," "Violation of N.C. Gen. Stat. § 75-1.1 for Unfair Competition/Passing Off,"

-71-

"Violation of Chapter 66" (other than as to the Vendor Files, the Dealer and Distributor Files, and the September 24th Records), "Declaratory Judgment - False Markings," and "Copyright Infringement - 18 U.S.C. § 501" (as to the "Bon Aqua Naturally" video) should be dismissed.

_____/s/ L. Patrick Auld_____
**L. Patrick Auld**
**United States Magistrate Judge**

January 29, 2013